United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 1, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-30613
_____

ILLINOIS CENTRAL RAILROAD COMPANY,

Plaintiff,

versus

RONALD L. DUPONT, ET AL.,

Defendants.

_____

FERN SHERIDAN ROSHTO DUPUY CONNOR, Etc., ET AL.,

Plaintiffs,

versus

CANADIAN NATIONAL/ILLINOIS CENTRAL
RAILROAD, ET AL.,

Defendants,

ILLINOIS CENTRAL RAILROAD COMPANY,

Defendant-Appellant,

versus

UNDERWRITERS INSURANCE COMPANY,

                                    Defendant-Appellee.

_____

Appeal from the United States District Court for
the Middle District of Louisiana
_____

Before REAVLEY, JOLLY and JONES, Circuit Judges.

REAVLEY, Circuit Judge:

In this insurance coverage dispute, appellee Illinois Central Railroad Co. (the Railroad) argues that an insurance policy issued by appellant Underwriters Insurance Co. (Underwriters) should be deemed to include an endorsement pertinent to a regulation of the motor carrier insured. The district court disagreed, and granted summary judgment in favor of Underwriters. We affirm.

## BACKGROUND

The Railroad sued Denmar Logging, Inc., (Denmar) a Louisiana logging company, after an accident in which one of Denmar's contract drivers collided with a Railroad train. The accident occurred in Louisiana, on a planned trip from a logging site in Mississippi to a paper mill in Louisiana. Ronald Dupont was driving the truck involved in the collision. At the time Dupont was hauling logs for Denmar but was driving his

own truck.[1]

Underwriters issued the business automobile insurance policy in issue to Denmar. Underwriters intervened in this suit, seeking a declaratory judgment that its policy did not cover the accident. It moved for summary judgment on grounds that the policy only covered one truck that was owned by Denmar and was not involved in the accident. We agree with Underwriters that the policy as written plainly did not cover the accident for this reason.

The Railroad argued below that, by virtue of the Motor Carrier Act of 1980 and a regulation promulgated thereunder, Denmar was required to have a special endorsement in its insurance policy, providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence, whether or not the vehicle involved in the accident is specifically described in the policy. This endorsement is known as the MCS-90 endorsement.[2]

---

[1] The Railroad argues that Dupont was a Denmar employee rather than an independent contractor, but we do not reach this issue.

[2] The MCS-90 endorsement, set out at 49 C.F.R. § 387.15 (2002), states in part:

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

"Basically, the MCS-90 makes the insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy."[3] The Railroad argued that the endorsement should be deemed a part of the policy because of the regulation.

A section of the Title 49 provides that neither the Secretary of Transportation nor the Surface Transportation Board (which assumed certain responsibilities of the defunct Interstate Commerce Commission) has jurisdiction over transportation by motor vehicle of "agricultural or horticultural commodities (other than manufactured products thereof)."[4] The district court held that the regulation requiring the MCS-90 endorsement did not apply to Denmar's logging operations because trees and logs are agricultural or horticultural commodities. It further held that if Denmar was required to have the MCS-90 endorsement, it failed to obtain the endorsement and was therefore subject to a fine, but that Underwriters could not be held liable for failing to include the endorsement, since there is no federal remedy imposing such a liability on Underwriters.

## DISCUSSION

We need not decide whether the MCS-90 regulation is inapplicable to the accident because of the statutory exemption for agricultural commodities. We note briefly that logs might well fall within the definition of an agricultural commodity applicable to the

---

[3] T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc., 242 F.3d 667, 671 (5th Cir. 2001).

[4] 49 U.S.C. § 13506(a)(6)(B).

statutory exemption.[5]  There are, however additional issues of statutory construction as to

whether this agricultural exemption applies to the MCS-90 regulation,[6] and whether the

_____

[5]  The exemption applies to transportation by motor vehicle of "agricultural or horticultural commodities (other than manufactured products thereof)."  49 U.S.C. § 13506(a)(6)(B).  A regulation interpreting this exemption, 49 C.F.R. § 372.115 (2002), provides that "Trees: Sawed into lumber" are manufactured products which are not exempt.  Were we required to decide the issue, we might well agree with the district court that trees which have simply been cut down for hauling are agricultural commodities and are not "manufactured products thereof," since we might conclude that raw timber is not the same as trees which have been "sawed into lumber" under the regulation.

[6]  The MCS-90 regulation was promulgated by the Secretary of Transportation.  Under 49 U.S.C. § 13506(a), the Secretary has no jurisdiction "under this part" to regulate the transportation by motor vehicle of agricultural commodities.  This exemption is found in Subtitle IV of Title 49, titled  "Interstate Transportation," and Part B of this subtitle covers "Motor Carriers" and other vehicles.  If the MCS-90 regulation was promulgated under the Secretary's authority to "prescribe regulations in carrying out this part" granted in a provision of Part B of Subtitle IV, 49 U.S.C. § 13301(a), and § 13506 of the same Part states that the Secretary has no jurisdiction to regulate the motor vehicle transportation of agricultural commodities, then the district court was correct in its analysis.  However, the Railroad points out that a different subtitle of Title 49, Subtitle VI, titled "Motor Vehicle and Driver Programs," has its own Part B, titled "Commercial." A provision found in this part, 49 U.S.C. § 31139(b), provides that the Secretary "shall prescribe regulations to require minimum levels of financial responsibility . . . ."  The Railroad may be correct in arguing that the MCS-90 regulation was promulgated under this Subtitle, which does not contain an agricultural exemption.  The MCS-90 regulation is contained in Part 387 of Title 49 of the Code of Federal Regulations, setting out regulations for "Minimum Levels of Financial Responsibility for Motor Carriers," which suggests that it is part of a regulatory package to implement Subtitle VI's financial responsibility section.  The Railroad's position is supported by the Eighth Circuit's analysis in Century Indem. Co. v. Carlson, 133 F.3d 591 (8th Cir. 1998), which held that "[t]he MCS-90 endorsement applies notwithstanding that an interstate motor carrier transported an agricultural commodity."  Id. at 600.  The court concluded that the agricultural commodity exemption was a limitation on the jurisdiction of the Interstate Commerce Commission, while the MCS-90 regulation was promulgated under the broader jurisdiction of the Department of Transportation to impose financial responsibility standards, granted in section 30 of the Motor Carrier Act of 1980 and codified at 49 U.S.C. § 31119.  Carlson, 133 F.3d at 599-600.

5

MCS-90 regulation applies to a logging company like Denmar.[7]  We simply posit, without resolving, these issues in the margin.

Regardless, we agree with the district court that, as an alternative basis for summary judgment, the failure to include the endorsement in the policy cannot give rise to the remedy the Railroad seeks, namely a reformation of the policy deeming the endorsement to be a part of the policy.

Even if Denmar was hauling a non-exempt product, and was otherwise required to have the MCS-90 endorsement in its vehicle insurance policy, its failure to obtain such an endorsement does not make Underwriters liable.  The Underwriters policy as written did

---

[7]  Even if the the financial responsibility regulations which include the MCS-90 endorsement are not subject to the statutory exemption for agricultural commodities, they might not apply to Denmar.  The Railroad states in its opening brief that "Denmar is a Louisiana corporation that operates solely in the logging business."  The president of Denmar testified in his deposition that "I work for an independent forester; he gets the tract of timber; I go to it, start cutting, haul it to ABC, whatever, the mill.  But I do not have a contract."  Whether Denmar had title to the logs at the time of the accident is unclear from the record.  The MCS-90 regulation might not be applicable to a logging company that was hauling its own logs to a paper mill.  Section 31139—the financial responsibility statute discussed above—by its terms applies to the interstate "transportation of property for compensation."  49 U.S.C. § 31119(b) (emphasis added). It therefore appears to apply to carriers who transport the goods of another.  The regulations comprising Part 387 of 49 C.F.R., regulations which arguably implement section 31119 and contain the MCS-90 endorsement, state that they apply to (1) carriers transporting certain hazardous materials and "for-hire motor carriers," (2) operating in interstate or foreign commerce, and (3) weighing over 10,000 pounds.  See 49 C.F.R. § 387.3 (2002) (emphasis added).  "For-hire carriage" is defined as "the business of transporting, for compensation, the goods or property of another."  Id. § 387.5 (emphasis added).  If Denmar is not in the business of transporting the goods of another for compensation, and is instead a private carrier who hauls its own logs, the MCS-90 regulation might not apply to its business.

6

not contain the endorsement. We reject the Railroad's argument that, since Denmar was required to have the endorsement, the policy should be read as automatically including the endorsement.

The regulations requiring the endorsement are directed at the motor carrier, not its insurer. They state that they prescribe "the minimum levels of financial responsibility required to be maintained by motor carriers,"[8] and that "[p]roof of the required financial responsibility" that includes the MCS-90 endorsement "shall be maintained at the motor carrier's principal place of business."[9] The regulations place responsibility on the motor carriers, not their insurers, as one would expect of regulations promulgated by the Secretary of Transportation pursuant to her authority to regulate motor carriers. Further, as the district court noted, the sanction prescribed in the relevant regulation for failure to carry the required insurance is a fine against the "person . . .who knowingly violates" the financial responsibility rules.[10]

Since the regulations requiring the MCS-90 endorsement are directed at the motor carrier, we do not read them as imposing a duty on the insurer to make sure that non-exempt motor carriers secure the required insurance. In short, the Railroad seeks the wrong remedy against the wrong party.

---

[8] 49 C.F.R. § 387.1 (2002).

[9] Id. § 387.7(d).

[10] Id. § 387.17 (2002); see also 49 U.S.C. § 31139(f).

The Railroad argues that as a matter of public policy the endorsement should be deemed a part of the policy. Assuming that public policy concerns should inform our analysis, we first question the fairness of placing a duty on insurance companies to determine whether an insured is a motor carrier for hire, who engages in the interstate shipment of non-exempt goods, using non-exempt vehicles, and is otherwise subject to the Motor Carrier Act and its complex regulations. The motor carrier is in the best position to know the nature of its business and the legal requirements for conducting that business.

Second, holding that the MCS-90 endorsement is automatically a part of the policy whether or not a motor carrier requested or paid for such an endorsement would create a perverse incentive. Motor carriers then would have an incentive not to comply with the regulations and obtain the endorsement and pay the additional premium associated with it, knowing that the courts would deem the endorsement part of the policy whether or not it was requested by the carrier.

The Railroad cites a Sixth Circuit case[11] in support of its contention that as a matter of law the MCS-90 endorsement should be incorporated into the policy, even if it is not physically attached to the policy. That case involved a dispute about which of two policies covering an accident was the primary policy. The court noted that one of the insurers conceded that the MCS-90 endorsement was incorporated into its policy as a

---

[11]    Prestige Cas. Co. v. Mich. Mut. Ins. Co., 99 F.3d 1340 (6th Cir. 1996).

8

matter of law even though it was not attached to the policy,[12] and therefore the court was not called upon to decide the issue here.

AFFIRMED.

---

[12] Id. at 1348 n.6.