**L.R.C. TRUCK LINE, INC. v. BERRYHILL**

[98 N.C. App. 306 (1990)]

———————

L.R.C. TRUCK LINE, INC. AND CNA INSURANCE COMPANIES v. RIELEY JANE BERRYHILL, WALTER JACKSON, MAGGIE JACKSON, FRANKLIN McLEAN, D.T.S. COTTON COMPANY AND THE CONTINENTAL INSURANCE COMPANY

No. 8919SC239

(Filed 1 May 1990)

**Insurance § 93 (NCI3d) — rented truck — primary and excess insurance — ICC endorsement**

The trial court in a declaratory judgment action to determine which of two insurance companies was liable for payment of damages resulting from a collision between a rented truck and a car correctly concluded that defendant Continental provides primary coverage and plaintiff CNA provides excess coverage where plaintiff L.R.C. leased a truck from D.T.S.; the driver was to be furnished by D.T.S.; the lease agreement called for D.T.S. to carry and pay for bobtail and deadhead insurance coverage; the accident occurred while the truck was being operated bobtail; L.R.C. maintained insurance with CNA which included an Interstate Commerce Commission endorsement and defendant Continental contended that the ICC endorsement preempted all other insurance, making the coverage provided by CNA primary as a matter of law. The analysis of *Carolina Casualty Insurance Company v. Underwriters Insurance Company*, 569 F.2d 304 (5th Cir. 1978), is correct and applicable: ICC policy factors are frequently determinative where protection of a member of the public or a shipper is at stake, but those factors cannot be invoked by another insurance company which has contracted to insure a specific risk and which needs no equivalent protection.

**Am Jur 2d, Automobile Insurance §§ 227, 433, 435.**

## L.R.C. TRUCK LINE, INC. v. BERRYHILL

[98 N.C. App. 306 (1990)]

APPEAL by defendants D.T.S. Cotton Company and Continental Insurance Company from judgment of *Judge Julius A. Rousseau* entered 8 August 1988 in CABARRUS County Superior Court. Heard in the Court of Appeals 10 October 1989.

*Hartsell, Hartsell & Mills, P.A., by W. Erwin Spainhour, for plaintiff appellees.*

*Waggoner, Hamrick, Hasty, Monteith, Kratt, Cobb & McDonnell, by S. Dean Hamrick, for defendant appellants, D.T.S. Cotton Company and Continental Insurance Company.*

COZORT, Judge.

This declaratory judgment action was brought to determine whether CNA Insurance Companies (CNA) or Continental Insurance Company (Continental) is liable for the payment of damages resulting from a collision between a D.T.S. Cotton truck, operated by Franklin McLean, and a car, driven by Walter Jackson. After a bench trial, Judge Rousseau concluded that Continental provides primary coverage and CNA provides excess coverage for the accident. We affirm.

On 14 January 1985, L.R.C. Truck Line, Inc. (LRC), and D.T.S. Cotton Co. (DTS) executed a lease entitled "Independent Contractor Agreement" (the Agreement). Under the Agreement, LRC, designated as the "Carrier," leased a tractor-type truck from DTS designated as the "Owner." Pertinent provisions of the Agreement, including the purpose of the parties, were as follows:

> The AUTHORIZED CARRIER is an interstate For-Hire Motor Carrier, operating under authority granted by the Interstate Commerce Commission . . . and by this agreement it undertakes to augment and supplement its fleet of equipment through special arrangement with independent contractors, who have motor truck equipment. The OWNER is and desires to be engaged in the business of transporting freight by motor vehicle pursuant to contract with private . . . carriers or shippers.

> \* \* \* \*

> 4. In addition to the equipment herein referred to, the OWNER as an independent contractor *agrees to furnish AUTHORIZED CARRIER during the entire life of this agreement all drivers* and all other necessary labor to perform all of the work necessary

for the transportation and the loading and unloading of such commodities as may be provided or directed to be hauled by the AUTHORIZED CARRIER.

\* \* \* \*

20. *All drivers*, drivers' helpers, and laborers engaged in the operation and loading and unloading of said equipment under this contract *are the employees of the OWNER and the OWNER is responsible for the payment of all such drivers*, drivers' helpers, and laborers, and the OWNER shall make such earnings deductions, as may be necessary under governmental law, rule, or regulation . . . . *The OWNER has and shall continue to have full and exclusive responsibility for the direction and control of agents, servants, and employees of the OWNER in-cluding* selecting, hiring, firing, *supervising, directing and train-ing them* . . . .

\* \* \* \*

22. Any other provision herein notwithstanding, the AUTHOR-IZED CARRIER shall maintain insurance coverage for the protection of the public pursuant to Interstate Commerce Com-mission regulations as set forth in 49 USC 10927. *The OWNER agrees to carry and pay for bobtail and deadhead insurance coverage with respect to public liability and property damage* with minimum limits of $100,000.00/$300,000.00/$50,000.00 cover-ing all equipment used hereunder and agrees to furnish evidence of such coverage to the AUTHORIZED CARRIER and shall cause the company or companies issuing such coverage to designate the AUTHORIZED CARRIER as a named additional insured and to furnish AUTHORIZED CARRIER an undertaking to notify AUTHORIZED CARRIER in writing of any termination or reduc-tion of such coverage at least ten (10) days prior to the effective date of such termination or reduction. . . .

If OWNER fails to furnish AUTHORIZED CARRIER with evidence of bobtail, deadhead and worker's compensation in-surance or request AUTHORIZED CARRIER to secure any or all of those coverages on its behalf, AUTHORIZED CARRIER shall obtain those coverages and deduct the costs thereof from its settlements with OWNER. . . .

*The OWNER shall hold the AUTHORIZED CARRIER harmless and shall be responsible for any loss or damage to any third*

*person* or to the property of any third person up to and including the sum of Five Hundred Dollars ($500.00) *for any accident for which OWNER or OWNER'S agents, servants, employees are responsible that is caused or contributed to by the negligence of the OWNER or any agents, servants or employees* of the OWNER. [Emphasis added.]

To operate a tractor "bobtail" means to drive it without pulling a trailer. The parties to the case below stipulated that DTS paid the wages of Franklin McLean based on a mileage formula. The mileage LRC paid DTS for the use of its tractor "did not begin until McLean reported to the LRC terminal . . . ." The parties stipulated further that

D.T.S. furnished a tractor to McLean and told him that he would be dispatched on trips from time to time by L.R.C. McLean kept the tractor in his possession and would report to terminals as directed by L.R.C. and would then deliver goods and merchandise loaded on trailers of L.R.C. to the destinations as directed by L.R.C. At the time of the accident referred to in the complaint, McLean had received a call from the L.R.C. dispatcher to go from his home [in North Carolina] to the L.R.C. terminal in South Carolina for the purpose of securing a trailer . . . .

Thus, at the time of the accident, McLean was operating the tractor bobtail.

DTS failed to have its insurer (Continental) designate LRC a "named additional insured" as required by term twenty-two of the Agreement. However, when the accident occurred, DTS's insurance contract with Continental provided coverage as follows:

**Part IV — LIABILITY INSURANCE**

\* \* \* \*

**D. WHO IS INSURED**

   \* \* \* \*

   2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow . . . .

   \* \* \* \*

L.R.C. TRUCK LINE, INC. v. BERRYHILL

[98 N.C. App. 306 (1990)]

**Part VI— CONDITIONS**

\* \* \* \*

**B. OTHER INSURANCE.**

> 1. For any covered **auto you** own this policy provides primary insurance. For any covered **auto you** don't own, the insurance provided by this policy is excess over any other collectible insurance.

As required by term twenty-two of the lease agreement, LRC maintained insurance pursuant to "Interstate Commerce Commission regulations as set forth in 49 USC 10927." In compliance with those regulations, LRC's insurance contract with CNA included an ICC endorsement reading in part as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the Company agrees to pay, within the limits of liability prescribed herein, any final judgment recovered against the insured for bodily injury to or death of any person, or loss of or damage to property of others (excluding injury to or death of the insured's employees while engaged in the course of their employment, and property transported by the insured, designated as cargo), resulting from negligence in the operation, maintenance, or use of motor vehicles regardless of whether or not such motor vehicles are specifically prescribed in the policy and whether or not such negligence occurs on any route or in any territory authorized by the Interstate Commerce Commission to be served by the insured or elsewhere.

> It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability or from the payment of any final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured. *However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the company,* and the insured agrees to reimburse the Company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would

not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement. [Emphasis added.]

LRC's insurance policy also provided that with "respect to a hired automobile or a non-owned automobile, this insurance shall be excess over any other valid and collectible insurance available to the Insured."

In entering judgment the trial court relied upon *Carolina Casualty Insurance Co. v. Underwriters Insurance Co.,* 569 F.2d 304 (5th Cir. 1978), whose essential facts are parallel to those in the case below. In *Carolina Casualty*, J.R.J. Trucking, Inc. (JRJ), leased a tractor to International Transportation Services, Inc. (ITS). JRJ agreed, among other items in its lease with ITS,

[2] to assume responsibility for and pay wages to the drivers; [3] to assume full responsibility for drivers as JRJ's employees, and to hold ITS-lessee harmless from driver's claims against ITS; [4] (a) to provide and keep in force property damage and public liability insurance, (b) to furnish a certificate of insurance showing ITS as the named insured and providing for notice of cancellation, and (c) to assume the expense in the event JRJ was unable to furnish evidence of insurance and ITS procured insurance on behalf of JRJ.

*Carolina Casualty*, 569 F.2d at 307 (footnotes omitted). While operating the tractor, one of JRJ's drivers was involved in an accident. At the time of the accident JRJ was insured by Carolina Casualty.

In a declaratory judgment action, Carolina Casualty contended that ITS's insurance policy was subject to the ICC endorsement required by 49 USC 10927 (quoted, in part, above) and that the ICC endorsement pre-empted all other insurance, making the coverage provided by ITS's insurer primary as a matter of law.

In rejecting Carolina Casualty's argument, the United States Court of Appeals for the Fifth Circuit held that the

purpose of § 215 of the Interstate Commerce Act and regulations is to assure to members of the public and shippers that a certificated carrier has independent financial responsibility, with the dollar limits prescribed, to pay for losses created by its carrier operations. On the face of the endorsement this

is accomplished by reading out "other insurance," "excess," or similar clauses insofar as the amount available to a third party victim would be reduced. But there is no need for or purpose to be served by this supposed automatic extinguishment of the clause insofar as it affects the insured or other insurers who clamor for part or all of the coverage. Indeed . . . the endorsement . . . prescribes that as between insurer and insured all terms of the policy are to remain in effect.

*Carolina Casualty*, 569 F.2d at 312.

We agree with the trial court that this analysis is correct and that it applies to the case below. The defendants' attempts to distinguish the facts in *Carolina Casualty* are wholly unpersuasive.

At the time of the accident, Continental "provided insurance for the defendant D.T.S. Cotton Company pursuant to a contract of insurance entitled 'Business Auto Policy' bearing policy number LBA3403812." Finding of Fact No. 13. DTS owned the tractor, employed the driver, and retained the "full and exclusive responsibility for the direction and control of [its] . . . employees . . . including selecting, hiring, firing, supervising, directing and training them." The accident occurred "at a time when no equipment belonging to LRC was being pulled by the tractor." Finding of Fact No. 16. Under these circumstances the trial court correctly concluded that the

ICC endorsement did not make CNA Insurance Companies, the liability carrier of the lessee, L.R.C. Truck Line, Inc., the primary insurer as a matter of law. The Continental Insurance Company cannot disavow its primary insurer status on the theory that public policy demands that this be pushed off onto CNA. ["]ICC policy factors are frequently determinative where protection of a member of the public or a shipper is at stake, but those factors cannot be invoked by another insurance company which has contracted to insure a specific risk and which needs no equivalent protection.["]

Conclusion of Law No. 2 (quoting *Carolina Casualty*, 569 F.2d at 313).

The trial court's judgment is

Affirmed.

Judges PHILLIPS and LEWIS concur.