PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CANAL INSURANCE COMPANY,
              *Plaintiff-Appellant,*

v.

DISTRIBUTION SERVICES,
INCORPORATED; AIM LEASING
COMPANY, d/b/a Aim Nationalease;
PACIFIC EMPLOYERS INSURANCE
COMPANY; WILLIAM THOMPKINS,
              *Defendants-Appellees,*

and

BRYAN I. LEE; SHANIA THOMPKINS, a
minor by and through her father and
next friend William Thompkins,
              *Defendants.*

No. 02-1226

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Dennis W. Dohnal, Magistrate Judge.
(CA-01-81-3)

Argued: January 23, 2003

Decided: February 27, 2003

Before WILLIAMS and MOTZ, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Hamilton wrote the
opinion, in which Judge Williams and Judge Motz joined.

_____

## COUNSEL

**ARGUED:** Mark Steven Paullin, SMITH & JENSEN, P.C., Richmond, Virginia, for Appellant. Ronald Paul Herbert, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Eric S. Jensen, Nathan H. Smith, Michael A. Kiely, SMITH & JENSEN, P.C., Richmond, Virginia, for Appellant. Charles G. Meyer, III, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellees.

## OPINION

HAMILTON, Senior Circuit Judge:

This appeal presents the question of first impression in our circuit: Whether an "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980,"[1] commonly referred to as the MCS-90 endorsement,[2] determines the allocation of loss among insurers. Consistent with the majority view of our sister circuits, we answer this question in the negative.

### I.

In order to put the facts of this case in their proper perspective, we will first set forth the relevant statutory and regulatory background. Congress enacted the MCA, in part, to address abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce. *Pierre v. Providence Washington Ins. Co.*, 2002 WL 31770499 (N.Y. Dec. 12, 2002); *see generally* Pub. L. No. 96-296, § 3. Accordingly, one remedial measure provided in the MCA is a liability insurance requirement imposed upon each motor carrier registered to engage in interstate commerce, which requirement mandates that a motor carrier file "a

---

[1] Pub. L. No. 96-296, 94 Stat. 793 (1980) (the MCA).

[2] 49 C.F.R. §§ 387.7, 387.15.

bond, insurance policy, or other type of security" in an amount determined by the Secretary of Transportation and the laws of the State or States in which the motor carrier intends to operate. 49 U.S.C. § 13906(a)(1); *see also* Pub. L. No. 96-296, § 30(c).

The Secretary of Transportation also has the authority to "prescribe the appropriate form of endorsement to be appended to policies of insurance and surety bonds which will subject the insurance policy or surety bond to the full security limits of the" required coverage. 49 U.S.C. § 13906(f). Pursuant to this regulatory authority, the Secretary of Transportation issued a regulation mandating that every liability insurance policy covering a "motor carrier" contain the MCS-90 endorsement.[3] 49 C.F.R. §§ 387.7(a), 387.9, 387.15. The MCS-90 endorsement provides, in relevant part, as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. [N]o condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the

---

[3]For purposes of the MCS-90 endorsement, "motor carrier" is defined as:

> a for-hire motor carrier or a private motor carrier. The term includes, but is not limited to, a motor carrier's agent, officer, or representative; an employee responsible for hiring, supervising, training, assigning, or dispatching a driver; or an employee concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories.

49 C.F.R. § 387.5.

company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

49 C.F.R. § 387.15, at Illustration I.

"It is well-established that the primary purpose of the MCS-90 [endorsement] is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers." *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 857 (9th Cir. 2000), *cert. denied*, 534 U.S. 1127 (2002). Accordingly, the MCS-90 endorsement creates a suretyship by the insurer to protect the public when the insurance policy to which the MCS-90 endorsement is attached otherwise provides no coverage to the insured. *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 672 (5th Cir. 2001); *Harco Nat'l Ins. Co. v. Bobac Trucking, Inc.*, 107 F.3d 733, 736 (9th Cir. 1997); *Progressive Cas. Ins. Co. v. Hoover*, 809 A.2d 353, 360 n.11 (Pa. 2002).

With this statutory and regulatory background in mind, we turn to the facts of the present case, which facts are not in dispute. On October 22, 1999, William Thompkins, and his minor daughter Shania Thompkins, suffered personal injuries as pedestrians in an accident with a tractor-trailer that was negligently operated by Bryan Lee (Lee). The accident took place in the parking lot of a truck stop in Caroline County, Virginia. At the time of the accident, Lee was working within the scope of his employment for Distribution Services, Inc. (DSI), a company engaged in the business of providing overland shipping and trucking services. DSI did not own the tractor truck (*i.e.*, the cab) involved in the accident (the Truck), but rather leased it from

AIM Leasing Company (AIM), a company engaged in the business of leasing tractor trucks and other vehicles to overland shipping and trucking companies.

At the time of the accident, DSI and Lee, acting within the scope of his employment with DSI, were insured by Canal Insurance Company (Canal) under a commercial automobile liability policy (the Canal Policy) which provided $1 million of liability insurance coverage for certain "covered autos" and contained the MCS-90 endorsement. Absent the MCS-90 endorsement, the Truck was not a "covered auto" under the Canal Policy.

AIM was insured at the time of the accident by Pacific Employers Insurance Company (Pacific) under a commercial automobile liability policy (the Pacific Policy) which provided $1 million of liability insurance coverage for certain covered autos and contained the MCS-90 endorsement. Pursuant to the rental agreement between DSI and AIM, DSI agreed to obtain primary liability insurance coverage for the Truck with AIM as an additional named insured and to indemnify and hold AIM, its agents, servants, and employees harmless from any and all claims for injury to persons or damage to property and for any and all expenses incurred in the defense of such claims. Pursuant to Endorsement 15 in the Pacific Policy, the Pacific Policy expressly conditioned coverage of leased vehicles, such as the Truck, (1) upon the lessee (DSI) furnishing AIM with a certificate of insurance naming AIM as an additional insured on the lessee's liability insurance policy and (2) upon other liability insurance required by the lease agreement being non-collectible. DSI never provided AIM with a certificate of insurance naming AIM as an additional insured on any liability insurance policy held by DSI.

Subsequent to the accident, Shania Thompkins, by her father as next friend, brought a negligence action related to her injuries against DSI and Lee in Virginia state court. Canal then brought a motion for declaratory judgment in Virginia state court seeking a determination of coverage for the underlying accident. Canal named DSI, Lee, and Shania Thompkins as defendants. Shania Thompkins removed the declaratory judgment action to the United States District Court for the Eastern District of Virginia. Prior to the entry of final judgment in her

state court negligence action, Canal settled with Shania Thompkins on behalf of DSI and Lee for $125,000.

Canal then amended its motion for declaratory judgment to name Pacific and AIM as defendants. Moreover, unlike Canal's original motion for declaratory judgment, its amended motion for declaratory judgment named William Thompkins as a defendant individually, not just as the father and next friend of Shania Thompkins. Canal did so in anticipation of William Thompkins filing his own negligence action in connection with the accident. Canal's amended motion for declaratory judgment sought a declaration that it "is entitled to a determination that any policy issued to [AIM] by [Pacific] provides coverage for the injuries alleged by Shania and William Thompkins, and Canal is entitled to seek reimbursement from [AIM] and [Pacific] for any settlement amounts or final judgments in favor of Shania or William Thompkins." (J.A. 25-26).

Canal subsequently made a motion for voluntary dismissal of Shania Thompkins as a defendant, which motion the district court granted. Thereafter, Pacific, AIM, and William Thompkins moved for summary judgment with respect to Canal's amended motion for declaratory judgment. The district court granted summary judgment in favor of Pacific, AIM, and William Thompkins and denied as moot Canal's amended motion for declaratory judgment. Following the district court's denial of Canal's motion to alter or amend the judgment, Canal filed the present appeal.

On appeal, Canal seeks reversal of the district court's entry of judgment in favor of Pacific and either: (1) entry of a declaratory judgment holding that Pacific is liable to partially reimburse it for the settlement amount that it paid to Shania Thompkins;[4] or (2) issuance of an opinion agreeing with its position as to the effect of the MCS-90 endorsement in this case and remanding the case to the district court for further proceedings in accordance therewith.

---

[4]We note that Pacific represents in its brief that following the district court's entry of judgment in its favor, Canal settled with William Thompkins in his individual capacity. However, Canal does not press any arguments or claims on appeal with respect to William Thompkins.

## II.

Whether a party was entitled to summary judgment is a matter of law, which we review *de novo*. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing the district court's grant of summary judgment, we must construe the facts in the light most favorable to the non-moving party. *See Smith v. Virginia Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) (*en banc*).

## III.

Canal's core argument, in support of its claim for partial reimbursement from Pacific in connection with the amount that it paid to settle Shania Thompkins' negligence action, is that the MCS-90 endorsement in the Pacific Policy nullifies the portion of Endorsement 15 in that same policy which excludes coverage for autos owned by AIM but leased to third parties. This argument raises the issue of first impression in our circuit as to whether the MCS-90 endorsement controls the allocation of loss among insurers as opposed to operating only when necessary to protect injured members of the public.

The operation and effect of the MCS-90 endorsement is a matter of federal law. *See, e.g.*, *Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d 604, 610 (5th Cir. 1989), *modified on other grounds*, 901 F.2d 45 (5th Cir. 1990); *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 545 (6th Cir. 1986); *Lynch v. YOB*, 768 N.E.2d 1158, 1162 (Ohio 2002). The federal courts of appeals which have already considered the issue now before us are split, with the majority holding that the MCS-90 endorsement does not control the allocation of loss among insurers. *T.H.E. Ins. Co.*, 242 F.3d at 673; *Empire Fire & Marine Ins. Co. v. J. Transport, Inc.*, 880 F.2d 1291, 1298-99 (11th Cir. 1989); *Occidental Fire & Cas. Co. of N.C. v. Int'l Ins. Co.*, 804 F.2d 983, 986 (7th Cir. 1986); *Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co.*, 722 F.2d 1400, 1404 (8th Cir. 1983); *Carolina Cas. Ins. Co. v. Insurance Co. of North Am.*, 595 F.2d 128,

140-41 (3d Cir. 1979). *Accord Great West Cas. Co. v. Mallinger Truck Line, Inc.*, 640 S.W.2d 479, 483-85 (Mo. Ct. App. 1982); *L.R.C. Truck Line, Inc. v. Berryhill*, 390 S.E.2d 692, 694-95 (N.C. Ct. App. 1990). *See also* Harold A. Weston, Annotation, *Motor Carrier Act–Loss Allocation*, 157 A.L.R. Fed. 549, at 567-69 (1999) (collecting cases). The rationale behind the majority view is that the purpose of the MCS-90 endorsement, like the Motor Carrier Act of 1980, is to protect the public, and therefore, the MCS-90 endorsement does not control the allocation of loss among insurers. For example, as the Fifth Circuit recently stated in *T.H.E.*, 242 F.3d at 673,

> [The MCS-90] endorsement accomplishes its purpose by reading out only those clauses in the policy that would limit the ability of a third party victim to recover for his loss. But there is no need for or purpose to be served by this supposed automatic extinguishment of [a] clause insofar as it affects the insured or other insurers who clamor for part or all of the coverage. Indeed, the MCS-90 states that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company." Therefore, . . . if an insurer's policy contained the [MCS-90] endorsement, it would not render the insurer primary as a matter of law. [T]he [MCS-90] endorsement is not implicated for the purpose of resolving disputes among multiple insurers over which insurer should bear the ultimate financial burden of the loss.

*Id.* (internal quotation marks and citations omitted) (second alteration in original).

The minority view is that the MCS-90 endorsement applies to determine allocation of loss among insurers. *Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1348-49 (6th Cir. 1996); *Empire Fire and Marine Ins. Co. v. Guaranty Nat. Ins. Co.*, 868 F.2d 357, 361-64 (10th Cir. 1989). *Accord Nolt v. U.S. Fid. and Guar. Co.*, 617 A.2d 578, 583 (Md. Ct. App. 1993); *Transport Indem. Co. v. Carolina Cas. Ins. Co.*, 652 P.2d 134, 143-45 (Ariz. 1982). *See also* Annotation, *Motor Carrier Act–Loss Allocation*, 157 A.L.R. Fed. at 567-69 (collecting cases). Those courts espousing the minority view

recognize that the purpose of the MCS-90 endorsement is to provide financial protection to injured members of the public, but reason that this fact alone does not lead to the conclusion that the MCS-90 endorsement modifies the policy vis-a vis the public but not vis-a-vis insurance companies. *Prestige Cas. Co.*, 99 F.3d at 1342-43, 1348-49; *Empire Fire and Marine Ins. Co.*, 868 F.2d at 362-63, 366 n.13. According to the minority view:

> [s]uch a chameleon-like quality of a clause in a commercial contract that changes character depending on who is seeking to apply it should not be favored unless compelled by the language of the instrument. The [MCS-90] endorsement is not written in special ink which appears for cases involving the public and disappears in cases involving other insurers. Here, the clause is physically attached to the policy and must be given effect.

*Empire Fire and Marine Ins. Co.*, 868 F.2d at 366 n.13 (internal quotation marks omitted).

We agree with and adopt the majority view of our sister circuits that the MCS-90 endorsement does not apply to determine the allocation of loss among insurers. Critically, the majority view, as compared to the minority view, is faithful to the express language of the MCS-90 endorsement which states: "However, all terms, conditions, and limitations in the policy to which the [MCS-90] endorsement is attached shall remain in full force and effect as binding between the insured and the company." 49 C.F.R. § 387.15, at Illustration I. This language makes clear that the MCS-90 endorsement operates to protect the public but does not alter the relationship between the insured and the insurer as otherwise provided in the policy. Similarly, the MCS-90 endorsement cannot reasonably be read to alter the terms of the policy for the benefit of other insurers.

Here, Canal seeks to enforce the MCS-90 endorsement in the Pacific Policy in its favor. According to Canal, if we affirm the district court, we will "insulate Pacific forever from any responsibility for a vehicle owned by its insured and subject to Pacific's MCS-90 [endorsement]." (Canal's Opening Br. at 9).

Canal's argument misses the mark. By virtue of Canal's settlement payment to Shania Thompkins, pursuant to the MCS-90 endorsement in the Canal Policy, the public protection purpose of the MCS-90 endorsement has been served. Therefore, the MCS-90 endorsement in the Pacific Policy does not come into play. Canal's claim for reimbursement then is subject to the actual terms of the Pacific Policy, which terms expressly exclude liability coverage for the Truck because DSI, at a minimum, failed to furnish AIM with a certificate of insurance naming AIM as an additional insured on a liability insurance policy issued to DSI.[5] In other words, for purposes of Canal's claim for reimbursement, the Truck is excluded from coverage. Therefore, the district court correctly granted summary judgment in favor of Pacific.

For the reasons stated, we affirm the judgment of the district court.

*AFFIRMED*

---

[5]Canal also takes issue with the district court's statement in its memorandum opinion that "coverage under the Canal Policy *is* 'collectible' under the applicable MCS-90." (J.A. 282). Canal contends that the district court should have made clear that its obligation under the MCS-90 endorsement is one of suretyship rather than providing insurance coverage *per se*.

Canal is not entitled to any appellate relief on this point. The district court made the statement merely in the context of observing that the second condition precedent of Endorsement 15 under the Pacific Policy had not been satisfied. At most, the statement was *dicta* because the district court had already held that Canal's claim against Pacific failed because the first condition of Endorsement 15 had not been satisfied. *Burdine v. Dow Chemical Co.*, 923 F.2d 633, 635 n.2 (8th Cir. 1991) (refusing to review *dicta*).