UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

VICKIE C. HUGGER; CAROLYN SETTLE,
    *Plaintiffs-Appellants,*

v.

THE RUTHERFORD INSTITUTE; THE
RUTHERFORD INSTITUTE OF NORTH
CAROLINA, INCORPORATED; JOHN W.
WHITEHEAD, individually; STEVEN H.
ADEN, individually,
     *Defendants-Appellees.*

No. 03-1987

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Carl Horn, III, Magistrate Judge.
(CA-00-180-5-H)

Argued: February 26, 2004

Decided: April 12, 2004

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** John Michael Logsdon, McELWEE & McELWEE, North
Wilkesboro, North Carolina, for Appellants. Stephen J. Neuberger,
THOMAS S. NEUBERGER, P.A., Wilmington, Delaware, for Appel-
lees. **ON BRIEF:** Thomas S. Neuberger, THOMAS S. NEUBER-
GER, P.A., Wilmington, Delaware, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

In this diversity action, we consider the limits of a state's ability to award presumed damages to victims of defamation. The defamatory statements at issue, which involved a public school teacher's classroom conduct, touched upon a matter of public concern, and therefore the victims could not recover unless they demonstrated that the defamer acted with actual malice or unless they proved actual damages. Because the victims have failed to meet their burden, the district court properly entered summary judgment in favor of the defamer. Accordingly, we affirm.

### I.

The facts are not in dispute. Appellants Vickie Hugger and Carolyn Settle are both employees of C.B. Eller Elementary School, a public school in Wilkes County, North Carolina. Hugger is the school's principal, and Settle is a sixth-grade teacher. At the time of the events that gave rise to this lawsuit, HD[1] was a twelve-year-old sixth-grade student in Settle's class. HD told her mother that Appellants made HD read the word "damn" aloud in class from an assigned book. (J.A. at 149-50.) She also told her mother that Settle made her erase the letters "WWJD," an acronym short for "What Would Jesus Do," from HD's "feature one student"[2] presentation. (J.A. at 150.) HD's mother e-mailed The Rutherford Institute[3] (TRI) to relate HD's story. TRI conducted a telephone interview with HD and her mother, and bought the

---

[1]We use the initials of the minor child to protect her privacy in accord with the Judicial Conference Policy on Privacy and the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002); *see also* Proposed Local Rule 10(d) (scheduled to take effect March 29, 2004).

[2]Apparently, Settle allowed each of her students to decorate a classroom blackboard to express his or her individuality.

[3]TRI is a civil liberties organization with a two-fold mission: "to provide legal services in the defense of religious and civil liberties and to educate the public on important issues affecting their constitutional freedoms." *See* Mission Statement *available at* http://www.rutherford.org/about/ (March 1, 2004).

book to verify that it contained the word "damn." (J.A. at 149-50.) On November 15, 1999, TRI sent a demand letter to the superintendent of schools for Wilkes County and Hugger based on the information given by HD. TRI's demand letter alleged that Appellants had violated HD's First Amendment rights and demanded "a written apology to [HD] from Ms. Hugger on district letterhead, with informational copies disseminated to all district administrative and instructional personnel. [TRI] further demand[ed] that Ms. Settle and Ms. Hugger be given a written reprimand for the incident." (J.A. at 20.) The letter indicated that if a response was not received before the close of business on the next day, November 16, 1999, TRI "would seek redress for [HD] and her family in federal court." (J.A. at 21.)

On November 15, 1999, counsel for Wilkes County responded to TRI, stating that he was "in the process of ascertaining the facts applicable to the incidents identified in [the TRI] letter" and that "[a]n appropriate response w[ould] be issued following completion of [his] inquiry." (J.A. at 137.) On November 16, 1999, counsel for Wilkes County spoke with TRI's local counsel on the telephone. County counsel indicated that he had spoken with both Appellants and "expressed his concerns regarding the truthfulness of HD's story." (J.A. at 150.) TRI re-contacted HD and her mother by telephone. During that telephone conversation, HD said she was not lying, repeated her story, and gave TRI the names of several witnesses. TRI called the potential witnesses and left messages, but none of the witnesses returned TRI's calls. Later that same day, November 16, 1999, TRI issued a press release reporting HD's version of the classroom events as fact. The press release was posted on TRI's website and distributed to local and national press. The press release identified C.B. Eller Elementary School, but it did not identify either Appellant by name.

Several days later, on November 22, 1999, HD admitted that she had been lying. On November 24, 1999, TRI issued a press release acknowledging that HD had lied and including an apology for the previous press release.

On October 26, 2000, Appellants filed a complaint in North Carolina state court, alleging that TRI had defamed them and had committed negligent and intentional infliction of emotional distress. TRI removed the case to the United States District Court for the Western

District of North Carolina based on the parties' diverse citizenship. Appellants filed a motion to remand the case to state court, averring a lack of complete diversity. The district court denied the motion.[4] TRI then filed a motion for summary judgment on all claims, which was granted on April 23, 2002. After a timely appeal, we affirmed the denial of the motion to remand and the grant of summary judgment on the Appellants' emotional distress claims. *See Hugger v. The Rutherford Institute*, 2003 WL 2008242 (4th Cir. 2003) (unpublished). We reversed the district court's grant of summary judgment on the defamation claim, however, holding that the district court had improperly decided a constitutional question in advance of considering the state law question upon which the case might have been disposed. *Id.* On remand, the district court held that the defendants had committed libel per se under North Carolina common law, but that the First Amendment barred recovery because Appellants were public officials and the evidence did not establish that TRI had acted with malice. Accordingly, the district court again entered summary judgment for TRI. Hugger and Settle filed a second appeal, and we now affirm the grant of summary judgment, albeit on slightly different reasoning.

II.

A.

We review the grant of summary judgment de novo. *Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 491 (4th Cir. 2003). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 491-92 (citing Fed. R. Civ. P. 56(c)). "In reviewing the district court's grant of summary judgment, we must construe the facts in the light most favorable to the non-moving part[ies]." *Id.* at 492. Accordingly, in reviewing the evidence, we draw all reasonable inferences in favor of Hugger and Settle, the non-moving parties. *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002).

---

[4]The parties consented to have the case decided by a Magistrate Judge pursuant to 28 U.S.C.A. § 636(c) (West Supp.2003). For ease of reference, we refer to the magistrate judge as the district court throughout.

B.

The district court held that Hugger and Settle were public officials and that they could not be found liable for defamation because the evidence was insufficient to demonstrate that TRI acted with actual malice. *See New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964) (holding that public officials cannot succeed in defamation lawsuits unless they establish that their defamer acted with actual malice). In this court, the parties' arguments focused largely on whether Appellants are public officials. Because, as discussed below, we find that the Appellants would not be entitled to recover any of the relief requested in their complaint even if they were wholly private figures, we need not decide that issue.

Hugger and Settle's complaint requests presumed damages, punitive damages, and actual damages. We address their request for presumed and punitive damages first and then turn to their request for actual damages. The First Amendment, made applicable to the states by the Fourteenth Amendment, *see Gitlow v. New York*, 268 U.S. 652 (1925), limits the ability of states to permit recovery of presumed or punitive damages by victims of defamation. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985). Recovery of presumed and punitive damages is permissible only if the defamer acted with actual malice or if the subject matter of the defamatory statement involved a "matter[ ] of purely private concern." *Id.*; *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974). "Whether . . . speech addresses a matter of public concern [or of purely private concern] must be determined by the [expression's] content, form, and context . . . as revealed by the whole record." *Connick v. Meyers*, 461 U.S. 138, 147-148 (1983); *see also Greenmoss*, 472 U.S. at 761; *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 686 (4th Cir. 1989) ("Because of the obvious importance of banks to the financial health of our communities and the historic governmental interest in the operations and solvency of these institutions, we have no difficulty concluding that . . . statements [regarding the financial condition of a community bank] relate to a matter of public concern."); *Mutafis v. Erie Ins. Exch.*, 775 F.2d 593, 595 (4th Cir. 1985) (holding that an insurance company's inter-office memorandum instructing its employees on how to handle a certain claim "was on a matter of purely private concern"). Thus, if TRI's press release relates to a mat-

ter of public concern, Appellants are not entitled to recover presumed damages unless TRI acted with actual malice.

A finding of actual malice "requires at a minimum that the statements were made with a reckless disregard for the truth." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). "[A]lthough the concept of reckless disregard cannot be fully encompassed in one infallible definition, [the Supreme Court] ha[s] made clear that the defendant must have made the false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of his publication." *Id.* at 667 (internal quotation marks and citations omitted); *see also Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 717 (4th Cir. 1991).

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

We first consider whether TRI's press release touched upon a matter of public concern. This issue need not detain us long, as the public undoubtedly has a strong interest in the classroom conduct, or misconduct as the case may be, of elementary school teachers and administrators. Had HD's story been true, it undoubtedly would have caused quite a stir. We do not mean to imply that every publication concerning a teacher or school administrator will necessarily relate to a matter of public concern. But, given the obvious importance of elementary schools in shaping the character of our future citizens, we conclude that the particular statements at issue here, which accused school administrators of suppressing freedoms of conscience and religion, related to matters of public concern. *Cf. Ambach v. Norwick*, 441 U.S. 68, 76 (1979) ("The importance of public schools in the preparation of individuals for participation as citizens, and in the preservation of the values on which our society rests, long has been recognized by our decisions. . . .").

Having determined that the defamatory statements at issue here involve a matter of public concern, we next consider whether Appellants have offered evidence from which a reasonable jury could conclude that TRI acted with actual malice. TRI was originally alerted to HD's story by an e-mail from HD's mother. After receiving the e-mail, TRI contacted HD's mother and spoke with both her and HD on the telephone. TRI then obtained a copy of the book that HD said that she was forced to read and ascertained that the book did, in fact, contain the word "damn." Based on this information TRI sent the demand letter.

After receiving the demand letter, the county attorney expressed "his concerns regarding the truthfulness of HD's story." (J.A. at 150.) In response, several TRI employees conducted a teleconference with HD and her mother. During that teleconference, HD maintained that she had not lied; told the story consistently with her prior report; gave additional explicit details "seemingly to add credence to her story"; and gave the names of witnesses. (J.A. at 150.) Because HD stood by her story in what TRI has claimed was a convincing manner, TRI attempted to contact the witnesses whose names HD had provided, but none of them returned TRI's telephone calls. Only after this follow-up investigation did TRI then send out the press release. TRI did not ignore the county attorney's concerns; instead, it conducted further investigation into HD's claim. TRI's actions are not those of one acting with reckless disregard for the truth. Although a reasonable person may have waited to hear from one of the corroborating witnesses before issuing the press release, the First and Fourteenth Amendments do not allow states to impose a standard of reasonableness upon defamers who are discussing matters of public concern. Because the evidence does not support a finding that TRI acted with actual malice, Appellants cannot recover the presumed damages authorized by North Carolina law.

Next, we address Appellants' claim for actual damages. Even if a private defamation plaintiff is precluded from recovering presumed damages, he or she may prove and recover for actual damages flowing from the defamatory statement without a showing of malice. *See Gertz*, 418 U.S. at 349-50. Thus, we must determine whether Appellant's have submitted sufficient evidence of actual damage to avoid

summary judgment.[5] Appellants claim that TRI's press release caused them humiliation and damaged their reputation. Although these are the types of actual damage that private defamation plaintiffs are entitled to prove and recover without a showing of malice, when questioned at oral argument, counsel for Appellants was unable to cite to any evidence in the record that would support an award of these damages. Instead, counsel opined that conclusory allegations of damage to reputation were enough to avoid summary judgment. We disagree. Were we to hold that such conclusory allegations were sufficient to avoid summary judgment, we would be, in effect, allowing juries to award damages to defamation plaintiffs on the basis of nothing other than the publication of a defamatory statement. We perceive no difference between such a holding and a rule allowing the recovery of presumed damages and, accordingly, we conclude that Appellants have not offered sufficient evidence of actual damage to avoid summary judgment.

III.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of TRI.

*AFFIRMED*

---

[5]We note that the record contains numerous medical reports detailing the psychiatric problems, such as depression and insomnia, of Hugger and Settle. The district court held that the record was insufficient to establish that these problems were caused by TRI's defamatory press release, and the Appellants did not appeal that ruling.