FILED
United States Court of Appeals
Tenth Circuit

October 11, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CATHERINE HERROD and ALAN
PARKINSON, as guardians ad litem for
S.H., T.H., M.H., E.H., minors, C.H.,
N.H., J.H.,

       Plaintiffs-Appellees,

v.

WILSHIRE INSURANCE COMPANY,

       Defendant-Third-Party-
       Plaintiff-Appellant,

---

ESPENSCHIED TRANSPORT,
a Utah corporation,

       Defendant-Third-Party-
       Defendant.

No. 11-4029
(D.C. No. 1:09-CV-00109-DB)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**,
Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R App. P. 32.1 and 10th Cir. R. 32.1.

Wilshire Insurance Company ("Wilshire") appeals from the district court's grant of summary judgment in favor of members of the Herrod family (collectively the "Herrods") on their claim for a monetary judgment. The Herrods sought to recover under an insurance policy Wilshire issued to Espenschied Transport ("Espenschied"), a freight trucking company. The Herrods had previously obtained a judgment against Espenschied for fatal injuries suffered by Kimball Herrod in a motor vehicle accident involving a trailer owned by Espenschied. At issue before the district court on summary judgment was whether the Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980 ("MCS-90 endorsement") attached to Espenschied's commercial liability insurance policy was triggered, so as to obligate Wilshire to pay the judgment against Espenschied. The district court held the MCS-90 endorsement applied. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm in part, vacate in part, and remand for further proceedings.

## I.    Background

To put the issues on appeal in context, we begin with the relevant statutory and regulatory background associated with the MCS-90 endorsement. Congress enacted the Motor Carrier Act of 1980 ("MCA"), Pub. L. No. 96-296, 94 Stat. 793, "to deregulate the trucking industry, increase competition, reduce entry barriers, and improve quality of service." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873 (10th Cir. 2009). Importantly, enactment of the MCA sought, in part, to "address

- 2 -

abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." *Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003). Accordingly, in order for a "motor carrier"[1] to operate as such, the MCA requires proof of financial responsibility demonstrating that the motor carrier is "adequately insured in order to protect the public from risks created by the carrier['s] operations," *Yeates*, 584 F.3d at 875; *see also* 49 U.S.C. § 31139(b), (f); 49 C.F.R. § 387.7(a). The minimum level of financial responsibility requirements apply only to "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce"[2] and motor carriers transporting hazardous materials. 49 C.F.R. § 387.3.

The MCS-90 endorsement constitutes such proof of requisite financial responsibility under the MCA. *See* 49 U.S.C. § 31139(f)(1)(A); 49 C.F.R. § 387.7(d)(1). Consequently, every liability insurance policy issued to motor carriers of interstate commerce contains the MCS-90 endorsement. *Distribution Servs.*, 320 F.3d at 489. The MCS-90 endorsement, in pertinent part, provides that the motor

---

[1] "Motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13012(14).

[2] As pertinent here, a for-hire motor carrier transporting property in interstate commerce must demonstrate financial responsibility of at least $750,000. *See* 49 U.S.C. § 31139(b)(2); 49 C.F.R. § 387.9.

- 3 -

carrier's insurer "agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of . . . the [MCA]" whether or not the vehicle involved in the accident is specifically described in the policy.[3] 49 C.F.R. § 387.15;

---

[3] The MCS-90 endorsement, set forth in 49 C.F.R. § 387.15, states in full as follows:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration.
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designed as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the

(continued)

- 4 -

*see also Yeates*, 584 F.3d at 874.  The motor vehicles that are subject to the financial responsibility requirements are those vehicles used "for the transportation of property by motor carrier or motor private carrier."  49 U.S.C. § 31139(b).

The MCS-90 endorsement is intended to impose a surety obligation on the motor carrier's insurer – in other words, the "endorsement is a safety net that covers the public in the event other insurance coverage is lacking."  *Yeates*, 584 F.3d. at 878.  An insurer's obligation to pay a negligence judgment against its insured pursuant to a MCS-90 endorsement is

> triggered only when (1) the underlying insurance policy to which the endorsement is attached does not otherwise provide coverage, *and* (2) either no other insurer is available to satisfy the judgment against the motor carrier, or the motor carrier's insurance coverage is insufficient to satisfy the federally-prescribed minimum levels of financial responsibility.

*Id.*

---

> company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.
>
> It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.
>
> The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

The issue here was whether Wilshire's MCS-90 surety obligation was triggered such that Wilshire was obligated to pay the judgment against Espenschied. The parties did not dispute the pertinent facts. Espenschied was established in 1982 as an interstate trucking distribution company providing transport and sorting services. In January 2005, Espenschied executed an Asset Purchase/Lease Agreement and an Equipment Lease Agreement, agreeing to lease its fleet of trailers to DATS Trucking, Inc. ("DATS"), a commercial freight trucking company. On January 30, 2005, a dual-wheel assembly came off the axle of an Espenschied trailer that was leased by DATS and attached to a tractor owned and operated by DATS, killing motorist Kimball Herrod. At the time of the accident, Espenschied was insured by Wilshire under a commercial auto liability policy that contained a MCS-90 endorsement. Wilshire denied coverage of the claim, asserting that the trailer involved in the accident was not listed on Espenschied's liability policy.

The Herrods[4] brought suit in Utah state court, alleging negligence and other claims, against Espenschied, DATS, and other parties. The state court complaint alleged that Espenschied's trailer was placed in service in an unsafe and defective condition. The Herrods' claims "focused on Espenschied's improper maintenance of the trailer before sending it out on the highway, including Espenschied's failure to have any inspection system in place concerning the securing of wheel assemblies." Aplee. Br. at 6. The Herrods ultimately settled their respective claims against

[4] Plaintiff-Appellee Alan Parkinson was not a party in the state court action.

- 6 -

Espenschied and DATS.[5]  As part of the settlement, Espenschied executed a confession of judgment in the amount of $1,292,499.99 that was filed in Utah state court, and judgment was entered against it.  The Herrods presented the judgment to Wilshire and demanded payment, but Wilshire refused.

The Herrods then brought this suit against Wilshire seeking judgment against it in the amount of $1,000,000, which was the policy limit.  On the parties' cross-motions for summary judgment, the district court entered judgment against Wilshire in the amount of $750,000 plus prejudgment interest, holding that Wilshire's MCS-90 obligation was triggered because Espenschied was a "motor carrier" for purposes of the MCS-90 endorsement and the confessed judgment against Espenschied constituted a negligence judgment.  This appeal followed.

## II.    Standard of Review

"We review summary judgment decisions de novo, applying the same legal standard as the district court."  *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1104 (10th Cir. 2008).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most

---

[5]     In the settlement with DATS, DATS and its liability insurers agreed to pay the Herrods $2,264,000.00 in cash and additional sums in future payments.

favorable to the nonmoving party." *Sanders*, 544 F.3d at 1105 (internal quotation marks omitted).

### III.    Discussion

### A.  Prior Compensation Received from DATS

On appeal, Wilshire first contends that the district court erred in rejecting Wilshire's argument that its MCS-90 obligation did not apply because the Herrods received compensation from DATS in excess of the minimum required under the MCA.  In other words, Wilshire claims the public policy behind the MCS-90 endorsement – to ensure safeguarding financial protection in the event a member of the public is injured due to a motor carrier's negligence – has been satisfied here by virtue of the Herrods' settlement with DATS and, therefore, the MCS-90 endorsement attached to Espenschied's liability insurance policy is not triggered. The district court rejected Wilshire's argument, holding that the financial responsibility requirements apply individually to each motor carrier and each motor carrier is responsible for the judgment entered against it.

Like the district court, we perceive nothing in the MCS-90 endorsement, the MCA, or the relevant regulations that would suggest that a motor carrier's MCS-90 insurer may avoid paying a negligence judgment entered against its insured on the basis that the injured member of the public has received compensation from a different motor carrier's insurer in settlement of claims against that motor carrier.

A commercial motor carrier may operate only if registered to do so, 49 U.S.C. § 13901, which requires proof of financial responsibility that is "sufficient to pay . . . *each* final judgment against the *registrant* [motor carrier] for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles," *id*. § 13906(a)(1) (emphasis added); *see also* 49 C.F.R. §§ 387.7, 387.301(a)(1); *Distribution Servs.*, 320 F.3d at 489 (noting that MCA imposes a liability insurance requirement "upon *each* motor carrier registered to engage in interstate commerce" (emphasis added)). These provisions establish that the financial responsibility requirements to engage in the transportation of interstate commerce are specific to the individual motor carrier.

Further, the MCS-90 endorsement provides that an insurer agrees to pay "any final judgment recovered against the *insured*" resulting from the insured's negligence in the operation, maintenance, or use of motor vehicles. 49 C.F.R. § 387.15 (emphasis added). Accordingly, the text of the MCS-90 endorsement supports the conclusion that an MCS-90 insurer's obligation to pay a final judgment is specific to its insured. Neither the text of the statute nor that of the regulations indicates or implies that an MCS-90 insurer may avoid paying a negligence judgment against its insured on the basis that the injured party has received compensation from another motor carrier's insurer in settlement of claims against that carrier. *See also Carolina Cas. Ins. Co. v. E.C. Trucking*, 396 F.3d 837, 841-42 (7th Cir. 2005) (rejecting argument that MCS-90 insurer was relieved of obligation to pay final

judgment rendered against its insured on the basis that injured party received compensation via a loan-receipt agreement in settlement of claims against another defendant).

Finally, to the extent Wilshire relies on *Yeates* in support of its argument, it misconstrues *Yeates*. In *Yeates*, we held that an MCS-90 endorsement is triggered if the underlying insurance policy does not provide liability coverage and the motor carrier's other insurance is insufficient to meet the mandated federal minimum or is nonexistent. *Yeates*, 584 F.3d at 879. In delineating this standard, we further stated that "[o]nce the federally-mandated minimums have been satisfied, however, the endorsement does not apply." *Id*. Wilshire latches on to this statement to argue that, because the Herrods have received in excess of the federally mandated minimum through their settlement with DATS, the minimum has been satisfied and, therefore, the MCS-90 endorsement attached to Espenschied's policy does not apply.

But Wilshire reads our statement in *Yeates* out of context. We explained in *Yeates* that the MCS-90 endorsement serves as a "surety in the event judgment against the [motor] carrier is for some reason unsatisfied." *Id*. at 880-81. We stated:

> Conceivably, the motor carrier may carry adequate insurance coverage providing recovery – at least to the FMCSA prescribed minimums – for a judgment in favor of an injured party. Or, the carrier may choose to pay the judgment out of its own pocket. In either of these cases, the purposes behind the MCS-90 are satisfied, and the endorsement is unnecessary. On the other hand, if, for example, the carrier fails to maintain insurance (or sufficient insurance) on a truck involved in an accident and fails to pay out of its own pocket for its liability to the injured party, the MCS-90 endorsement's purpose is clearly implicated.

- 10 -

> The endorsement in this circumstance would effectuate a minimum level of recovery for the injured party from the MCS-90 provider.

*Id.* at 881 (citation omitted). Accordingly, once the federally mandated minimum has been satisfied *as against a particular motor carrier*, either by virtue of the motor carrier's liability coverage or payment out of pocket, that particular motor carrier's MCS-90 endorsement does not apply. But what Wilshire seeks is to be relieved of any MCS-90 surety obligation simply because the Herrods received payment from another motor carrier, even though the judgment against Wilshire's insured, Espenschied, remains unsatisfied.

We find no error in the district court's rejection of Wilshire's argument. Because the federally mandated minimum has not been met, as against Espenschied, Wilshire's MCS-90 endorsement (theoretically) is implicated. Our holding is limited to the situation where, as here, a negligence judgment has been entered against a motor carrier and has not been satisfied as against that particular motor carrier. In that instance, the motor carrier's MCS-90 insurer may not evade payment of the judgment against its insured on the basis that the injured party has received compensation elsewhere. We express no opinion on whether Espenschied is a "motor carrier."

## B. Espenschied's Status as a "Motor Carrier"

Wilshire next contends that the district court erred in concluding that Espenschied was a "motor carrier" for purposes of triggering its MCS-90

- 11 -

endorsement.  As will be explained more fully, we vacate this portion of the judgment and remand for further proceedings.

Our resolution of this issue rests primarily on the definition of the term "motor carrier" and, as such, our discussion begins there.  The financial responsibility requirements of the MCA apply to "motor carriers."  49 U.S.C. § 31139(b) (noting that the Secretary of Transportation shall prescribe regulations requiring minimum levels of financial responsibility to satisfy public liability "for the transportation of property by *motor carrier*") (emphasis added); *see also* 49 C.F.R. §§ 387.3, 387.7.  The MCA defines "motor carrier" as "a person providing motor vehicle transportation for compensation."  49 U.S.C. § 13102(14).  Federal regulations promulgated pursuant to the MCA and accompanying the MCS-90 endorsement define "motor carrier" as a "for-hire motor carrier or a private motor carrier."[6]  49 C.F.R. § 387.5.  In turn, "for-hire carriage" is defined as "the business of transporting, for compensation, the goods or property of another."  *Id*.  Finally, the regulations establish that the minimum financial responsibility requirements of the MCA apply to "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce" and for-hire motor carriers transporting hazardous materials.  *Id*. § 387.3(a), (b).

---

[6]     The term "motor carrier" also "includes, but is not limited to, a motor carrier's agent, officer, or representative; an employee responsible for hiring, supervising, training, assigning, or dispatching a driver; or an employee concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories."  49 C.F.R. § 387.5.

Our review of the record reveals that Wilshire argued in the district court that its MCS-90 endorsement was not triggered because Espenschied, as merely the lessor of the trailer, was not a "motor carrier" as it "was not transporting property *for hire* when the accident occurred."  Jt. App. at 324-25 (emphasis added); *see also id*. at 655.  Instead, DATS, the lessee, was the only company doing so.  *Id*. at 324-25, 655.

The district court concluded that Wilshire's MCS-90 obligation was triggered, however, because Espenschied was a registered motor carrier; it owned the trailer and was responsible for its maintenance; the Herrods sued Espenschied for its negligent maintenance of the trailer; and the MCS-90 endorsement requires payment for injury "resulting from negligent operation, maintenance, or use of motor vehicles."  *See id*. at 1044.  In so ruling, the district court addressed Wilshire's argument that Espenschied was not "operating, maintaining or using" the trailer at the time of the accident, but it did not address Wilshire's separate argument that Espenschied was not acting as a for-hire motor carrier at the time of the accident.

As we construe the MCA and relevant regulations, the financial responsibility requirements of the MCA – including the MCS-90 endorsement – apply only to for-hire motor carriers.  *See, e.g*., 49 U.S.C. §§ 31139(b), 13102(14); 49 C.F.R. §§ 387.3, 387.5.  Accordingly, in order to determine whether Wilshire's MCS-90 endorsement applies, it must be determined initially whether Espenschied was operating as a for-hire motor carrier at the time of the accident.  It does not appear that the district court made such a determination, however.  It noted that

Espenschied is a "registered motor carrier," Jt. App. at 1044, but it did not answer the question whether Espenschied was operating as a for-hire motor carrier at the time of the accident.[7]

To be a "for-hire carriage," Espenschied had to be in the "business of transporting, *for compensation*, the goods or property of another." 49 C.F.R. § 387.5 (emphasis added). The district court's order did not address the factual predicate of "compensation" that is necessary to qualify Espenschied as a for-hire motor carrier. Wilshire argued that a lessor of motor-vehicle equipment does not act as a for-hire motor carrier, within the meaning of the MCA and the pertinent regulations, for purposes of triggering an MCS-90 endorsement. We therefore direct the district court, on remand, to determine whether Espenschied was acting as a for-hire motor carrier at the time of the accident.

---

[7] The parties do not seem to dispute that Espenschied was a federally certified freight trucking company and that it had motor carrier authority at the time of the accident. Although this may be factually accurate, it does not answer the separate question whether Espenschied was transporting the goods of another for compensation at the time of the accident in order to qualify it as a for-hire motor carrier for purposes of triggering Wilshire's MCS-90 obligation.

- 14 -

## IV.    Conclusion

The judgment of the district court is affirmed in part, vacated in part, and remanded for further proceedings consistent with the views expressed herein.


Entered for the Court


Wade Brorby
Senior Circuit Judge