229 F.3d 853 (9th Cir. 2000)
 JOHN DEERE INSURANCE COMPANY, an Illinois corporation, Plaintiff-cross-defendant-Appellee,
v.
GUILLERMO NUEVA, Defendant-Appellant,
LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, Defendant-cross-claimant-Appellant,
and
JOO SANG LEE, DEDRIC MANGUM, RASHPAL SINGH, GURMUKH SINGH GARCHA, BLUE STAR TRUCKING, aka Blue Star Transportation, INDERJIT SINGH, SOUTHWESTERN CARRIERS, BALJIT SAHOTA, PROGRESSIVE NORTHWESTERN INSURANCE COMPANY, TARSEM SINGH, Defendants-Cross-defendants.
 No. 98-56464
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted April 4, 2000
Filed September 20, 2000
 
 Jacqueline Jordan Leung, Boornazian, Jensen & Garthe, Oakland, California, for the appellants.
 Garth Goldberg, Wilson, Kenna & Borys LLP, Los Angeles, California, for the appellee.
 Appeal from the United States District Court for the Central District of California. Lourdes G. Baird, District Judge, Presiding. D.C. No.CV-98-00036-LGB
 Before: Procter Hug, Jr., Chief Judge, Warren J. Ferguson, Circuit Judge, and Jane A. Restani,[1] Court of International Trade Judge.
 HUG, Chief Judge:
 
 
 1
 We are asked to decide whether a federally mandated endorsement to an insurance policy creates a duty on the part of an insurer to indemnify a permissive user of an auto not covered by the underlying policy for injuries he negligently caused to members of the public. The district court found that the endorsement did not modify the policy to require indemnification and granted summary judgment for the insurer. This is an issue of first impression for this circuit. We have jurisdiction pursuant to 28 U.S.C 1291, and for the following reasons, we reverse the district court judgment.
 
 BACKGROUND
 
 2
 This appeal arises out of an underlying personal injury action entitled Nueva v. Garcha, et. al., Los Angeles County Superior Court Case No. TC 009762 ("underlying action"). The underlying facts, which are not in dispute, are that a tractor/semi-trailer operated by Gurmukh Singh Garcha ("Garcha") and Blue Star transportation ("Blue Star") rearended a Los Angeles County Metropolitan Transit Authority ("LACMTA") bus operated by Guillermo Nueva ("Nueva") (collectively "Appellants"). The collision resulted in a total loss to the bus and personal injuries to Nueva.
 
 
 3
 The tractor/semi-trailer unit was being driven by Garcha. The tractor was owned by Inderjit Singh ("Singh") and Garcha dba Blue Star, who are uninsured and not involved in this appeal. This appeal revolves around the liability associated with the other vehicle, the Great Dane semi-trailer ("trailer"), which was owned by Baljit Singh Sahota dba Sahota Trucking ("Sahota"). Sahota is John Deere's named insured. Prior to the accident, Sahota had agreed to sell the trailer to Blue Star, but the title had not yet transferred because the final payment had not been made. Sahota's policy with John Deere included a federally mandated MCS-90 endorsement, whose scope is the subject of this appeal.
 
 
 4
 On January 5, 1998, John Deere filed a complaint against several parties, including LACMTA and Nueva, seeking a declaration that John Deere had no duty, pursuant to a policy of insurance it issued to Sahota, to indemnify Sahota, Garcha,and Blue Star, among other parties, with respect to any liability arising out of the underlying action filed by Nueva. On March 20, 1998, LACMTA filed an answer to the complaint and a cross claim for declaratory relief against John Deere. LACMTA asked for a declaration that, with respect to the John Deere policy, Garcha and Blue Star are `insureds' pursuant to the MCS-90 endorsement to the policy and the California permissive user statute, thus requiring John Deere to pay judgment against Sahota, Garcha, and Blue Star, subject to a limit of $750,000.
 
 
 5
 The parties both made motions for summary judgment. On July 6, 1998, the district court issued an order granting John Deere's motion for summary judgment, denying LACMTA and Nueva's motion for summary judgment and dismissing Sahota and Sahota Trucking for lack of prosecution. The district court found that the insurance policy did not cover the operators of the tractor/trailer combination vehicle as "insureds" because the MCS-90 endorsement created merely a "reimbursable obligation" with respect to payments on behalf of its insured, Sahota, but did not create "coverage" for Garcha and Blue Star, who it classified as users of non-scheduled vehicles. The judgment was entered October 15, 1998. LACMTA and Nueva appeal.
 
 STANDARD OF REVIEW
 
 6
 We review a grant of summary judgment de novo. Robi v. Reed, 173 F.3d 736, 739 (9th Cir. 1999).
 
 THE JOHN DEERE POLICY
 
 7
 We begin with an examination of the relevant terms and provisions of the policy itself. The John Deere Policy was issued to Sahota on or about August 21, 1995 and was in force at the time of the accident. The policy obligated John Deere to pay all sums that an "insured" is legally obligated to pay for bodily injury or property damage caused by an accident and resulting from the use of a covered automobile under the policy.
 
 
 8
 The policy's relevant definition of "WHO IS AN INSURED" is as follows:
 
 
 9
 (a) You for any covered auto;
 
 
 10
 (b) Anyone else while using with your permission a covered "auto" you own, hire or borrow . . ."
 
 
 11
 The focus of our inquiry is John Deere's obligation to indemnify Garcha and Blue Star, who were permissive users of Sahota's trailer. We will therefore focus on the definitionof "insured" contained in part (b), which limits permissive user coverage to "covered autos".
 
 
 12
 We thus turn to the question of what is a "covered auto". Section I of the policy entitled COVERED AUTOS defines SPECIFICALLY DESCRIBED "AUTOS" as follows:
 
 
 13
 Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers " you don't own while attached to any power unit described in ITEM THREE).
 
 
 14
 Neither the trailer nor any other vehicle or portion of any vehicle involved in this accident was listed in ITEM THREE of Sahota's policy.[2]
 
 
 15
 Therefore, as a threshold matter, we note that the trailer is not a covered auto. Consequently, since Garcha and Blue Star were permissive users of a non-covered auto, they are not "insureds" per the underlying policy's express terms. However, our inquiry does not end here. The John Deere Policy was amended and supplemented by form MCS-90 endorsement for Motor Carrier Policies of Insurance For Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980,[3]("MCS-90") as required at the time by 49 US.C.S 10927. The endorsement stated, in pertinent part:In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy . . . It is understood and agreed that no condition, provision, stipulation, or limitations contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.
 
 
 16
 (Emphasis added).[4]
 
 DISCUSSION
 
 17
 Federal law applies to the operation and effect of ICC mandated endorsements. See Planet Ins. Co. v. Transport Indem. Co., 823 F.2d 285, 288 (9th Cir. 1987); see also Canal Ins. Co. v. First General Ins. Co., 889 F.2d 604, 610 (5th Cir. 1989), modified on other grounds, 901 F.2d 45 (5th Cir. 1990); Ford Motor Co. v. Transport Indem. Co. , 795 F.2d 538, 545 (6th Cir. 1986); In re Yale Express Sys., Inc., 362 F.2d 111, 114 (2d Cir. 1966).
 
 
 18
 The question before us is whether the MCS-90 endorsement to Sahota's policy obligates John Deere to indemnify Garcha and Blue Star in the underlying action. The Appellants argue that the MCS-90 endorsement to Sahota's policy negates the limiting definition of "covered auto " in part (b) of the policy. By extension, they argue that part (b)'s definition of "WHO IS AN INSURED" is thus modified to include permissive users of non-covered autos. Accordingly, they contend that John Deere cannot rely on these limiting provisions of the underlying policy to avoid the indemnification duties invoked by the endorsement. John Deere disagrees and argues that it is not legally liable for judgments against parties other than its named insured and that the definition of "insured" is not altered by the MCS-90 endorsement. John Deere maintains that while the MCS-90 may negate the "covered auto" limitation in part (a) of the "WHO IS AN INSURED " section, it does not negate the "covered auto" limitation for permissive users in part (b).
 
 
 19
 The district court relied heavily on our decision in Harco Nat. Ins. Co., v. Bobac Trucking, Inc., 107 F.3d 733 (9th Cir. 1997) in finding for John Deere. The court read Harco as creating a dichotomy between the inclusive "coverage " provided under an insurance policy and the distinct and separate "reimbursable obligation" imposed by an MCS-90. The court reasoned that because Garcha was not a named insured and because he drove a non-covered auto, John Deere owed no duty to indemnify because "the MCS-90 . . . [does] not vary the terms of the policy so as to create "coverage " where it did not formerly exist; [it imposes] only a reimbursable obligation as to final judgments rendered against the named insured."
 
 
 20
 We conclude that the district court's reliance on Harco was misplaced. Furthermore, we disagree with the court's readingof the MCS-90, which we conclude does provide for indemnification under the factual circumstances of this case.
 
 
 21
 In Harco, we considered whether an MCS-90 endorsement created a duty on the part of an insurer to defend its insured in an underlying personal injury action involving a vehicle not covered under the main policy. The insured had argued that the MCS-90 endorsement superseded the limiting language of the policy, in which a duty to defend existed only as to "covered autos." In resolving the claim in favor of Harco, we observed that "federal courts have consistently stated that the MCS-90 endorsement does not create a duty to defend claims which are not covered by the policy but only by the endorsement." Id., 107 F.3d at 735-36 (internal citations omitted).
 
 
 22
 Harco is distinguishable on a number of grounds. First and foremost, Harco dealt solely with a duty to defend and did not address a duty to indemnify. See id. at 735. These two duties are separate and distinct, a fact we recognized when we noted that "the reimbursement provision of the MCS-90 is inconsistent with implying a duty to defend." Id. at 736. The most notable distinction between the two duties is that while the MCS-90 explicitly imposes a duty to indemnify an insured for liability related to non-covered autos, it is silent about a duty to defend an insured for non-covered autos. Insofar as Harco held that the MCS-90 does not implicitly create a duty to defend, this holding is irrelevant when considering a duty to indemnify because, as noted, the MCS-90's sole purpose is to create such a duty.
 
 
 23
 Furthermore, under the MCS-90 endorsement, as between the insured and insurer, all limitations, endorsements and other terms and conditions of the policy remain in effect. See id. at 736. Since the Harco policy, on its own terms, did not contain a duty to defend for non-covered autos, and those policy terms remained in effect as between the insured and insurer, the MCS-90 did not extend "coverage" to create such a duty. See id. The instant case differs in the crucial respect that the MCS-90 explicitly provides that John Deere must indemnify its insured for non-covered autos, thus expressly negating the covered auto limitation in the main policy.
 
 
 24
 Finally, the dispute in Harco was between an insurer and its insured and as we recognized, "[t]he purpose of the MCS-90 is to protect the public, not to create a windfall to the insured." Id. (internal citation omitted). It is well-established that the primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers. See id. at 736 (citing Canal 889 F.2d at 611) (other citations omitted); see also Adams v. Royal Indem. Co., 99 F.3d 964, 968 (10th Cir. 1996) ("By requiring all such described insurance policies to contain this ICC endorsement, the ICC prevents the possibility that, through inadvertence or otherwise, some vehicles may be left off a policy to the detriment of the public.")(internal citation omitted); Empire Fire and Marine Ins. Co., v. Guaranty National Ins. Co., 868 F.2d 357, 362-63 (10th Cir. 1989) ("[T]he ICC endorsement that is the subject of this appeal had its origin in the ICC's desire that the public be adequately protected when a licensed carrier uses a leased vehicle to transport goods pursuant to an ICC certificate.") (internal citations omitted).[5]
 
 
 25
 The Appellants in the instant case are injured members of the public, and thus are precisely the group meant to be protected by the MCS-90. Consequently, the policy considerations inherent in this dispute did not play a role in Harco and the case's applicability is even further limited. See Harco, 107 F.3d at 736 (finding that plaintiff's proffered distinction between disputes between insurers, and disputes between an insurer and an insured, was meaningless because"[t]he public protection purpose has been served here[.]")
 
 
 26
 In sum, though the district court and John Deere place enormous emphasis on Harco's statement regarding the limitation of "coverage" to specifically described vehicles, we conclude that Harco's reasoning and analysis provide no guidance to our resolution of the instant case. Similarly John Deere's reliance on John Deere Ins. Co. v. Truckin' USA, 122 F.3d 270 (5th Cir. 1997), is misplaced. That case involved the death of Mr. and Mrs. Kurocik as a result of an accident with a tractor/trailer rig owned by Truckin' USA. See id. at 271. Their heirs sued multiple defendants, including Copp Trucking Inc., whose name appeared on the tractor rig. See id. at 271-72. Transport Insurance Co. insured Copp trucking. Transport settled the Kurocik heirs' claims against Copp. Truckin' USA carried an insurance policy with John Deere Insurance. Transport sought reimbursement from John Deere for the settlement amount it paid on behalf of Copp since the tractor trailer was owned by Truckin' USA, John Deere's insured. See id.
 
 
 27
 The Fifth Circuit held that because the policy did not name Copp Trucking as an insured, the MCS-90 provided no basis for relief. See id. at 275. The court stated that "where an insurance policy does not provide coverage for non-listed vehicles except to third-party members of the public through operation of the endorsement, the policy provides no coverage for purposes of disputes among insurers over ultimate liability." Id. This is an unremarkable assertion given that the integral purpose of the MCS-90, to protect third party members of the public, is not implicated in a dispute between two insurers See Carolina Cas. Ins. Co. v. Underwriters Ins. Co., 569 F.2d 304, 313 (5th Cir. 1978) ("ICC Policy factors are frequently determinative where protection of a member of the public . . . is at stake, but those factors cannot be invoked by another insurance company which has contracted to insure aspecific risk and which needs no equivalent protection.") We again note that the Appellants in this case are injured members of the public seeking redress. Therefore, John Deere's reliance on Truckin' USA is misplaced.
 
 
 28
 As we noted at the outset, this Circuit has not previously considered the precise question presented in this appeal. However, the Tenth Circuit, on nearly identical facts, concluded that an MCS-90 endorsement requires an insurer to indemnify a permissive user of a non-covered auto. See Adams, 99 F.3d at 968.
 
 
 29
 In Adams, Royal Indemnity Company ("Royal") issued two pertinent insurance policies. First, Royal issued a policy to Thomas, a member of the partnership that owned a vehicle known as Trailer 701. The partnership had leased the trailer to Geigley. Second, Royal issued a policy to Geigley. Both policies included the MCS-90 endorsement. Trailer 701 was not a covered vehicle under either policy. Geigley lent Trailer 701 to Hofer. While driving a tractor/trailer unit which included Trailer 701, Hofer negligently caused an accident that severely injured Adams. See id. at 964-65. Adams sued Hofer in state court and obtained a default judgment of approximately $1 million. Adams was unable to obtain the judgment from Hofer and thus brought an action against Royal claiming that it had a duty to indemnify Hofer by virtue of the MCS-90 endorsements on Geigley and Thomas's policies. See id. at 965-66.
 
 
 30
 Adams held that the MCS-90 endorsement had the effect of expanding coverage to Hofer under Geigley's policy. See id. at 971. The court noted that the endorsement indirectly modified Royal's policy definition of "insured" which limited coverage to a person using a "covered auto". See id. Because of this modification, the court concluded that Hofer constituted an "insured" under Geigley's policy. See id. Significantly, Adams concluded that the definition of insured as modified by the endorsement would effectively read "Anyone else is an insured while using with your permission an auto you own, hire, or borrow . . ." Adams, 99 F.3d at 971. Accordingly, Royal was obligated to indemnify Hofer for the judgment to Adams.[6] See id. at 972. We agree with the reasoning expressed in Adams.
 
 
 31
 The critical language in the endorsement is the provision which states that "the insurer agrees to pay. . . any final judgment recovered against the insured for public liability . . . regardless of whether or not each motor vehicle is specifically described in the policy[.]" (emphasis added). This language indicates that whatever limitation a policy expresses regarding coverage extending only to "covered" or "specified" autos, this limitation ceases to operate when an injured member of the public seeks indemnification on behalf of the "insured". See Empire, 868 F.2d at 362 (The MCS-90 "negates any inconsistent limiting provisions in the insurance policy to which it is attached[.]"). Furthermore, a policy containing the MCS-90 "cannot explicitly limit liability to those vehicles specifically described therein, nor can it indirectly so limit coverage by attempting to define who is an insured in terms of specifically described vehicles." Adams , 99 F.3d at 970; See also Canal 889 F.2d at 610 (recognizing that the MCS-90 reads excess and other-insurance clauses out of the policy as against injured members of the public.)
 
 
 32
 John Deere asks us to read the use of the word "insured" in the endorsement as referring only to its named "insured", Sahota. In other words, John Deere maintains that the MCS90 only negates the "covered auto" limitation with regard to the named insured, and would not impact its obligations regarding permissive users. However, we decline to limit the endorsement in this manner. Under John Deere's proffered interpretation, the MCS-90 negates the express provision in part (a) of the "WHO IS AN INSURED" section of the policy which limits coverage to only "covered autos. " This is so because without the endorsement, Sahota would not be an "insured" under the policy if he caused injury while driving a non-covered auto. It is the endorsement that would transform him into an "insured". Thus, it is inescapable that the effect of the MCS-90 endorsement is to modify the policy's definition of an "insured." Yet John Deere nonetheless argues that the same provision of the endorsement is meaningless when applied to a different part of the same section of the policy.
 
 
 33
 We can see no rational basis for distinguishing between the endorsement's effect on the part (a) definition of "insured" and its effect on the part (b) definition. Had Garcha and Blue Star been driving a covered auto under the policy, they would have been covered as "insureds" under the policy per the express definition in part (b). We conclude that the MCS-90 operates in exactly the same manner when applied to the definition of "insured" in part (b) as it does when applied to part (a). In both cases, the MCS-90 negates the limitation that only users of "covered autos" are "insureds". Therefore, we conclude that under the policy before us, John Deere cannot avoid indemnifying Garcha and Blue Star by relying on the policy's narrow definition of "insured" which attempts to limit that status to permissive users of solely "covered autos". See Adams, 99 F.3d at 970.
 
 
 34
 We note that our interpretation of the endorsement effectuates its intended purpose of assuring that the insurer is available as a financially responsible party on behalf of the authorized carrier, so that injured members of the public are able to collect judgments obtained against these carriers. See Adams 99 F.3d at 968-69. Garcha and Blue Star were authorized carriers using Sahota's trailer with permission, andNueva and LACMTA are injured members of the public. Under these circumstances, the MCS-90 serves the purpose it was expressly designed to serve, modifying a policy to insure the availability of insurance for negligently injured members of the public. Interpreting the endorsement in the way advocated by John Deere would frustrate this express Congressional goal.
 
 
 35
 In conclusion, it is undisputed that Garcha and Blue Star were using the Great Dane trailer with Sahota's permission at the time of the accident and that the trailer was, at that time, a regulated vehicle that Sahota owned. Therefore, Garcha and Blue Star are "insureds" under the MCS-90 modification to the Sahota policy and John Deere is liable to the Appellants for any judgment against Garcha and Blue Star up to the policy maximum.
 
 CALIFORNIA PERMISSIVE USER STATUTE
 
 36
 The district court also ruled against the Appellants on their claim that Garcha and Blue Star should be afforded coverage under California Insurance Code 11580.1. Given that we have decided in the Appellants' favor under federal law, we decline to reach their state statutory claim.
 
 CONCLUSION
 
 37
 For the reasons stated, we REVERSE the district court's ruling that John Deere is not liable to LACMTA and Nueva under the Sahota policy as modified by the MCS-90 endorsement, and we REMAND for further proceedings on that claim.
 
 
 38
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Jane A. Restani, Judge of the Court of International Trade, sitting by designation.
 
 
 [2]
 The fact that the vehicle involved in this accident is the Great Dane trailer is of no import because the policy's definition of "automobile" includes trailers.
 
 
 [3]
 An ICC endorsement, an MCS-90, is required to be attached to any liability policy issued to a certified interstate carrier. See 49 C.F.R. 1003.3. The endorsement is designed to eliminate the possibility of denial of coverage by an insurer based upon an excess "other insurance" clause or other limiting provisions contained in the policy. See 49 C.F.R. 387.15 (containing the form endorsement). The ICC was abolished by Congress in 1995. See ICC Termination Act, 109 Stat. 803 (1995). The ICC's authority toregulate motor carriers was transferred to the Department of Transportation, See 49 U.S.C. 13501 et seq, but the old ICC regulations remain in effect until the new regulations are promulgated.
 
 
 [4]
 Pursuant to the MCS-90 endorsement, "motor vehicle" is defined to include trailers.
 
 
 [5]
 We note that there is no functional difference between a leased vehicle or a borrowed vehicle when the focus of the inquiry is the duty owed to an injured member of the public. Attempts to circumscribe liability by the use of leased or borrowed vehicles was the impetus behind the ICC's mandating the MCS-90 endorsement. See Empire, 868 F.2d at 361.
 
 
 [6]
 John Deere attempts to distinguish Adams based on the court's second conclusion that Thomas's policy did not apply to the trailer because, at the time of the accident, Thomas neither owned nor had control over the trailer since it was owned by the partnership and not by Thomas individually. See id. at 971. This argument is unavailing however, because in the instant case it is undisputed that Sahota owned the Great Dane trailer.