IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 4, 2012

## NORTHLAND INSURANCE COMPANY v. MICHAEL BURTON AND DONALD BURTON d/b/a BURTON BROTHERS TRUCKING

**Appeal from the Chancery Court for Warren County**
**No. 9686     Larry B. Stanley, Jr., Judge**

**No. M2012-00057-COA-R3-CV - March 27, 2013**

Insurance Company provided Trucking Company with a general liability insurance policy that included the MCS-90 endorsement required by the Motor Carrier Act of 1980. A woman who was a passenger in the insured's tractor made a claim against Insurance Company for injuries she sustained after the tractor turned over. Insurance Company paid the woman's claim even though she had not filed a complaint or obtained a judgment against Trucking Company/Insured. Insurance Company then filed a complaint against Trucking Company seeking reimbursement for the amount it paid out. Trial court awarded Insurance Company reimbursement. We reverse because no judgment had been obtained against Trucking Company when Insurance Company paid the woman's claim. The MCS-90 endorsement is not triggered unless an injured member of the public recovers a final judgment against a motor carrier/insured. Therefore, Insurance Company had no right of reimbursement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

B. Timothy Pirtle, McMinnville, Tennessee, for the appellants, Michael Burton and Donald Burton d/b/a Burton Brothers Trucking.

Samuel A. Baron, Nashville, Tennessee, for the appellee, Northland Insurance Company.

### OPINION

#### BACKGROUND

Northland Insurance Company ("Northland") issued a commercial auto and

commercial general liability insurance policy (the "Policy") to Michael W. Burton and Donald J. Burton d/b/a Burton Brothers Trucking ("Burton Brothers") on November 13, 2001. Burton Brothers was a motor carrier engaged in interstate commerce. Consistent with the requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration and the Interstate Commerce Commission, the policy Northland issued to Burton Brothers included the MCS-90 endorsement. This endorsement guarantees the payment of minimum amounts to an injured member of the public resulting from negligence by an interstate motor carrier.

In August 2002 Burton Brothers sought to have an individual named Ronald Sirbaugh added to its policy as a covered driver. Northland denied coverage to Mr. Sirbaugh based on his driving record. Donald Burton, on behalf of Burton Brothers, executed a policy rider on September 5, 2002, specifically excluding Mr. Sirbaugh from coverage by Northland.

On September 30, 2002, at Burton Brothers' request, Mr. Sirbaugh drove a tractor and trailer carrying lumber to South Carolina. The tractor and trailer belonged to Burton Brothers and was covered by the Policy. Mr. Sirbaugh was carrying a passenger named Janet Miller with him, and while she was in the cab Mr. Sirbaugh caused the tractor and trailer to roll over in a one-vehicle accident in South Carolina. The record does not contain proof of any injuries Ms. Miller sustained, but Northland alleges Ms. Miller suffered injuries as a result of the accident and that her attorney brought a claim against Northland for her damages. Northland asserts it paid Ms. Miller $42,000 to settle her claims.

Northland subsequently filed a complaint against Burton Brothers seeking reimbursement for the $42,000 it paid Ms. Miller. Northland's position is that despite its exclusion of Mr. Sirbaugh from the Policy, it was required by the MCS-90 endorsement to pay Ms. Miller's injury claim. The language of the MCS-90 endorsement attached to the Policy provides in pertinent part:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FWHA) and the Interstate Commerce Commission (ICC).

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of

motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

Burton Brothers denied having any liability to Northland under the Policy. Burton Brothers asserted as an affirmative defense that the amount allegedly paid to Ms. Miller was unwarranted. Following a trial on the merits, the trial court issued an Order in which it wrote:

On or about September 30, 2002, Ron Sirbaugh was allowed to drive a truck for the Defendants' business. Ron Sirbaugh was accompanied by a friend or girlfriend, Janet Miller. On that occasion Ron Sirbaugh caused an accident in the truck owned by the Defendants and Janet Miller was injured. Janet Miller brought a claim against the Petitioner and such claim was paid pursuant to the MCS-90 endorsement. The sum paid was $42,000.

The Court finds that the Petitioner was required to pay Janet Miller under the MCS-90 endorsement. The sum paid to Janet Miller was to be reasonable and necessary.

The Court finds that the Defendants voluntarily executed the endorsement excluding Ron Sirbaugh from the insurance coverage.

Therefore, the Court finds that pursuant to the insurance policy existing between the parties on September 30, 2002, the Defendants are liable to the Petitioner in the amount of $42,000 plus the costs of this action.

Burton Brothers filed a motion to alter or amend the judgment, which was denied. Burton Brothers then filed a Notice of Appeal.

## ISSUES ON APPEAL

On appeal Burton Brothers contends the trial court erred by ruling Burton Brothers is obligated to reimburse Northland because (1) Northland voluntarily paid a claim that was not reduced to a judgment; (2) Ms. Miller was excluded from coverage under the Policy because she was an occupant of the insured vehicle; and (3) Burton Brothers was economically coerced into executing the exclusion from coverage of Ronald Sirbaugh.

## ANALYSIS

"Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." *Jones Masonry, Inc. v. W. Am. Ins. Co.*, 768 S.W.2d 686, 687 (Tenn. Ct. App. 1989) (quoting *Guardian Life Ins. Co. of Am. v. Richardson*, 129 S.W.2d 1107, 1115-16 (Tenn. Ct. App. 1939)). The question of interpretation of a contract is a question of law. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Therefore, the trial court's interpretation of a contractual document is not entitled to a presumption of correctness on appeal. *Id*.; *Angus v. Western Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). This court must review the document ourselves and make our own determination regarding its meaning and legal import. *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993). Our review is governed by well-settled principles.

Congress passed the Motor Carrier Act of 1980 as part of an effort to deregulate the trucking industry, increase competition, reduce entry barriers, and improve quality of service. Pub. L. No. 96-296, 94 Stat. 793 (1980); *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873 (10th Cir. 2009). Some legislators feared that the expanded entry provided by the Act would

lead to increased safety problems and that increased entry would open the highways to truckers who might not have enough concern for their vehicles' safety. *Id.* Congress, therefore, included provisions in the Act to address these concerns, and required interstate motor carriers to obtain a special endorsement providing that the insurer will pay, within policy limits, any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence. *Id.* at 873-74 (citing *Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003), *Empire Fire & Marine Ins. Co. v. Guar. Nat'l Ins. Co.*, 868 F.2d 357, 362 (10th Cir. 1989), and *Illinois Cent. R.R. Co. v. Dupont*, 326 F.3d 665, 666 (5th Cir. 2003)). This endorsement is known as the MCS-90, quoted above.

The substantive rights of the parties to the Policy are governed by Tennessee law, where the Policy was entered into. *Armstrong v. United States Fire Ins. Co.*, 606 F. Supp.2d 794, 801 (E.D. Tenn. 2009). Federal law, however, applies to the operation and effect of the MCS-90 endorsement. *Id.* at 802; *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 856 (9th Cir. 2000); *Canal Ins. Co. v. First General Ins. Co.*, 889 F.2d 604, 610 (5th Cir. 1989), *modified on other grounds*, 901 F.2d 45 (5th Cir. 1990).

Northland stated in its complaint, and one of its employees testified at trial, that Ms. Miller informed Northland she had suffered a separated shoulder and detached retina as a result of the accident. A claims manager for Northland testified that a Northland employee informed Burton Brothers that Northland was handling Ms. Miller's claim and that Northland would be looking to Burton Brothers for reimbursement. Northland contends it paid Ms. Miller $42,000 to settle her claim. There is nothing in the record to suggest Ms. Miller filed a complaint against Burton Brothers or even informed Burton Brothers of her alleged injuries, either before contacting Northland or since.[1]

Burton Brothers argues, *inter alia*, that it should not be required to reimburse Northland for the amount Northland paid Ms. Miller because Ms. Miller failed to obtain a final judgment against Burton Brothers, the insured under the Policy. The MCS-90 endorsement expressly provides that "the insurer (the company) agrees to pay within the limits of liability described herein, any **final judgment recovered against the insured** for public liability resulting from negligence in the operation, maintenance or use of motor vehicles . . . ." (Emphasis added.) Since Ms. Miller failed to recover a judgment against Burton Brothers, Burton Brothers argues the MCS-90 reimbursement provision was not triggered and Northland is therefore not entitled to be reimbursed by Burton Brothers.

The Tenth Circuit Court of Appeals has considered the interplay of the MCS-90 endorsement and liability insurance in *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868 (10th

---

[1]Ms. Miller apparently did not file a complaint against Northland to recover any damages either.

Cir. 2009).  According to the *Yeates* court, the endorsement "operates to ensure payment of a minimum amount of an injured party's judgment against a negligent motor carrier." *Id*. at 882.  It is designed to ensure the collectability of a judgment; it is not meant to relieve an injured member of the public from the requirement that he or she obtain a final judgment of legal liability against the motor carrier.  *Id*. at 875.

The insurer's obligation under the MCS-90 endorsement is best described as a suretyship.  *Yeates*, 584 F.3d at 878; *see Canal Ins. Co. v. Carolina Cas. Ins. Co.*, 59 F.3d 281, 283 (1st Cir. 1995) (MCS-90 endorsement essentially is suretyship by insurance company providing safety net to public when other insurance is lacking); *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 672 (5th Cir. 2001) (purpose of MCS-90 endorsement is to assure that injured members of public are able to collect on judgments obtained against negligent carriers).  In acting as a surety, the insurer promises to pay a negligence judgment against a motor carrier/insured only when (1) the underlying insurance policy to which the endorsement is attached does not otherwise provide coverage, and (2) either no other insurer is available to satisfy the judgment against the motor carrier/insured, or the insured's insurance coverage is insufficient to satisfy the federally prescribed minimum levels of financial responsibility. *Id*.; *see Kline v. Gulf Ins. Co.*, 466 F.3d 450, 453-55 (6th Cir. 2006) (insurer whose policy includes MCS-90 endorsement acts as surety to protect public when insured fails to insure up to minimum required by federal law); *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 442 n.4 (3rd Cir. 2006) (if commercial liability insurer fails to pay final judgment rendered against its insured, insurer becomes personally responsible for judgment); *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 470 (5th Cir. 2005) (MCS-90 endorsement makes insurer liable to third parties for liability resulting from negligent use of motor vehicle by insured).

Stated another way, the purpose of the MCS-90 endorsement is to guarantee a source of payment of a judgment against the motor carrier/insured in the event the motor carrier fails to maintain sufficient liability coverage and then fails to satisfy a judgment against it out of its own pocket.  *Yeates*, 584 F.3d at 879-81.

The purpose of the endorsement is to protect the public, not to have the insurer stand in the shoes of the motor carrier/insured. Once the insurer satisfies a judgment obtained by a member of the public against its insured, the insurer is entitled to seek reimbursement from its insured for any money it paid out that it would not have been required to pay under the terms of the underlying policy if not for the MCS-90 endorsement.  *Id*. at 881; *see John Deere Ins. Co.*, 229 F.3d at 857 (purpose of MCS-90 is to protect public, not create windfall to insured).

Burton Brothers cites *Freeman v. Integral Ins. Co.*, 1994 WL 279762 (Tenn. Ct. App.

June 24, 1994), in support of its argument. The insurance company in that case had issued a liability policy to the owner of a tractor that was involved in an accident, but the policy did not cover the tractor at issue or the driver thereof. *Id.* at *1. The insurer's policy included the MCS-90 endorsement, however, and the parties injured in the accident filed a declaratory judgment action to determine whether the insurance policy provided coverage for the negligence of the owner and of the driver because of the MCS-90 endorsement. *Id.* at *2. The plaintiffs moved for partial summary judgment, and when the trial court issued its ruling in favor of the plaintiffs no judgment had been rendered against either the driver or owner of the tractor. *Id.* On appeal the Court of Appeals dismissed the plaintiffs' case because it was not yet ripe for adjudication:

> In the present case, a separate suit is pending to determine the liability of Alton J. Hinote and/or Leon Bundy. There is no allegation or proof that a judgment has been rendered against either of these individuals. The policy endorsement . . . promises payment of any final judgment rendered against "the insured." So far as this record shows, there may never be a final judgment against either of these individuals. Until final judgment of liability, there is no right to enforce this provision.

*Id.* at *3.

We agree with Burton Brothers' argument that the MCS-90 endorsement was not triggered in this case because Ms. Miller did not first obtain a judgment against Burton Brothers for its negligence.[2] If Ms. Miller had obtained a judgment against Burton Brothers for damages she suffered from the accident caused by Mr. Sirbaugh, Northland would have been required by the endorsement to satisfy her judgment and would then have been entitled to seek reimbursement from Burton Brothers. This is because Mr. Sirbaugh was specifically excluded from coverage as a driver under the Policy, and Northland would not have been liable for any judgment Ms. Miller may have obtained against Burton Brothers in the absence of the MCS-90 endorsement. As between the insurer and the insured, all limitations and other terms and conditions of the policy remain in effect. *John Deere Ins. Co.*, 229 F.3d at 857.

In light of our holding that Northland is not entitled to be reimbursed for its payment to Ms. Miller, the other issues Burton Brothers raises on appeal are pretermitted and we will

---

[2] While there is case law that the endorsement can be triggered when a claim is filed and then settled before a judgment is entered, *T.H.E. Ins. Co. v. Larsen Untermodal Servs., Inc.*, 242 F.3d 667, 676 (5th Cir. 2001), we are not aware of any cases where the endorsement is triggered in the absence of a complaint against the motor carrier and either a judgment or settlement against the motor carrier.

therefore not address them.

**CONCLUSION**

The trial court's judgment in favor of Northland is reversed. Costs of this appeal shall be assessed against Northland Insurance Company, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE