******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RENEE MARTINEZ *v.* EMPIRE FIRE AND MARINE
INSURANCE COMPANY
(AC 35367)

DiPentima, C. J., and Beach and Keller, Js.

*Argued February 14—officially released June 24, 2014*

(Appeal from Superior Court, judicial district of New
Haven, Zemetis, J.)

*Stacey D. Lafferty*, with whom was *Vincent R. Falcone*, for the appellant (plaintiff).

*Tracy L. Montalbano*, with whom was *Daniel P. Scapellati*, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Renee Martinez, appeals from the summary judgment rendered by the trial court in favor of the defendant, Empire Fire and Marine Insurance Company. The plaintiff sought to recover under an insurance policy that the defendant had issued to Tony's Long Wharf Transport, LLC (Tony's), a towing company registered as an interstate motor carrier.[1] The plaintiff previously had obtained a judgment against Tony's for personal injuries she sustained in a motor vehicle accident involving her vehicle and a truck owned by Tony's and driven by one of its employees. At issue before the trial court on summary judgment was whether the federally mandated MCS-90 endorsement[2] attached to the insurance policy was triggered, so as to obligate the defendant to pay the judgment rendered against its insured. On appeal, the plaintiff claims that the trial court erred in finding that the MCS-90 endorsement did not apply. The plaintiff also argues that the public policy of protecting innocent motorists from negligent motor carriers mandates the enforcement of the MCS-90 endorsement in this case. We disagree and conclude that because Tony's vehicle was not being operated as a "for-hire" motor carrier at the time of the accident, the MCS-90 endorsement was not triggered. Accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On April 11, 2006, the plaintiff was involved in an automobile collision with a 2000 Ford F-450 Dynamic Wrecker (truck) owned by Tony's. The truck was being operated by Edward Reynolds, who at the time was employed by Tony's as a heavy-duty truck mechanic. At the time of the collision, Reynolds was retrieving motor vehicle parts from a facility in Hamden, which he then was to transport to Tony's facility in New Haven. Reynolds was to use those motor vehicle parts to repair other vehicles owned by Tony's at the New Haven facility. On July 24, 2006, the plaintiff, alleging personal injuries as a result of Tony's tortious conduct, commenced an action against Tony's, Reynolds, and Anthony Juliano, who formerly was the managing member of Tony's.

On May 5, 2010, the court rendered judgment against Tony's and awarded to the plaintiff damages in the amount of $693,025.69, plus costs. The judgment was not satisfied within thirty days of the date it was rendered because, in a letter to Tony's dated April 26, 2006, the defendant had denied liability coverage under an insurance policy that it had issued to Tony's prior to the collision.

The insurance policy at issue in this appeal is a Commercial Lines Policy, effective April 27, 2005 through April 27, 2006.[3] Although the truck originally was listed

on the schedule of covered vehicles of the policy, it later had been removed, at the request of Tony's, by way of an endorsement dated October 7, 2005. The effective date of the truck's removal from the policy was September 30, 2005, more than six months before the collision. Nevertheless, a federally mandated MCS-90 endorsement was attached to the policy. The MCS-90 endorsement provides in relevant part: "[The defendant] . . . agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy* . . . . It is further understood and agreed that, upon failure of the [defendant] to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the [defendant] to compel such payment." (Emphasis added.)

The plaintiff brought the underlying action, as a judgment creditor, against the defendant, as an insurer, pursuant to General Statutes § 38a-321.[4] In her one count complaint, dated October 4, 2010, the plaintiff alleged that the defendant is liable to her because, at some point prior to the day of the collision, the defendant had issued an automobile liability policy to Tony's, and under the terms of that policy, the defendant promised to indemnify Tony's against claims arising from the negligence of its agents and employees while operating its motor vehicles, including the truck involved in the collision, owned by Tony's. The plaintiff concluded that, pursuant to § 38a-321, she was subrogated to the rights of Tony's as against the defendant for its failure to pay the underlying judgment, and that the defendant, therefore, is liable to her for the unpaid balance thereof.

The defendant moved for summary judgment, asserting that the truck had been removed from the insurance policy as a covered vehicle prior to the collision. The plaintiff subsequently filed an objection to the defendant's motion. Therein, the plaintiff did not dispute that the truck had been removed from the policy prior to the collision. Instead, she argued that the MCS-90 endorsement attached to the policy was triggered and therefore the defendant was obliged to pay the judgment rendered against its insured. The court heard oral argument on the motion, and in a memorandum of decision filed on December 24, 2012, granted the defendant's motion for summary judgment. The court found, essentially, that because there was no genuine issue of material fact that Tony's was not transporting goods in interstate commerce at the time of the accident, the MCS-90 endorsement was not triggered so as to obligate the defendant to pay the judgment rendered

against its insured.[5] The court also concluded, however, that there was no issue of fact that Tony's was operating as a "for-hire" motor carrier at the time of the automobile collision because "[u]ncontradicted evidence was proffered to show that Reynolds . . . was being compensated for transporting the property of another . . . ." This appeal followed.

Before turning to the relevant statutory and regulatory background, we begin with the well established standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *CitiMortgage, Inc.* v. *Coolbeth*, 147 Conn. App. 183, 190–91, 81 A.3d 1189 (2013), cert. denied, 311 Conn. 925, 86 A.3d 469 (2014).

Having set forth the pertinent facts and standard of review, we now turn to the background of the Motor Carrier Act of 1980 (MCA), 49 U.S.C. § 10101 et seq. Federal law applies to the operation and effect of the MCS-90 endorsement. See, e.g., *John Deere Ins. Co.* v. *Nueva*, 229 F.3d 853, 856 (9th Cir. 2000), cert. denied, 534 U.S. 1127, 122 S. Ct. 1063, 151 L. Ed. 2d 967 (2002). Although no Connecticut appellate court has done so, several other state and federal courts have discussed the MCA, and the MCS-90 endorsement specifically, in great detail. See, e.g., *Canal Ins. Co.* v. *Coleman*, 625 F.3d 244 (5th Cir. 2010); *Carolina Casualty Ins. Co.* v. *Yeates*, 584 F.3d 868 (10th Cir. 2009); *John Deere Ins. Co.* v. *Nueva*, supra, 229 F.3d 853; *Newman* v. *State Farm Mutual Auto Ins. Co.*, 62 So. 3d 808 (La. App. 2011).

Congress enacted the MCA "to deregulate the trucking industry, increase competition, reduce entry barriers, and improve quality of service. . . . Importantly, enactment of the MCA sought, in part, to address abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid finan-

cial responsibility for accidents that occurred while goods were being transported in interstate commerce." (Citation omitted; internal quotation marks omitted.) *Herrod* v. *Wilshire Ins. Co.*, 499 F. Appx. 753, 754 (10th Cir. 2012). To that end, the MCA provides that a commercial motor carrier may operate only if registered to do so; 49 U.S.C. § 13901 (a); and if it is "willing and able to comply with . . . [certain] minimum financial responsibility requirements . . . ." 49 U.S.C. § 13902 (a) (1) (A); see also *Carolina Casualty Ins. Co.* v. *Yeates*, supra, 584 F.3d 875 (MCA and regulations thereunder require proof of financial responsibility demonstrating that motor carrier is "adequately insured in order to protect the public from risks created by the [carrier's] operations").

In response to the passage of the MCA's minimum financial responsibility requirements mandate, the federal Secretary of Transportation promulgated a motor carrier endorsement form known as the MCS-90 endorsement. See 49 C.F.R. 387.15. "The MCS-90 endorsement constitutes such proof of requisite financial responsibility under the MCA. See 49 U.S.C. § 31139 (f) (1) (A); 49 C.F.R. § 387.7 (d) (1). Consequently, every liability insurance policy issued to motor carriers of interstate commerce contains the MCS-90 endorsement. . . . The MCS-90 endorsement, in pertinent part, provides that the motor carrier's insurer agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of . . . the [MCA] *whether or not the vehicle involved in the accident is specifically described in the policy.* 49 C.F.R. § 387.15 . . . . The MCS-90 endorsement is intended to impose a surety obligation on the motor carrier's insurer—in other words, the endorsement is a safety net that covers the public in the event other insurance coverage is lacking." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Herrod* v. *Wilshire Ins. Co.*, supra, 499 F. Appx. 755–56; see also *Century Indemnity Co.* v. *Carlson*, 133 F.3d 591, 594 (8th Cir. 1998) ("[t]he MCS-90 provides a broad guaranty that the insurer will pay certain judgments . . . regardless of whether the motor vehicle involved is specifically described in the policy or whether the loss was otherwise excluded by the terms of the policy").

The MCS-90 endorsement is required to be attached to any liability policy issued to "for-hire" motor carriers operating motor vehicles transporting property in interstate commerce. See *Canal Ins. Co.* v. *Coleman*, supra, 625 F.3d 246. The MCA defines a "motor carrier" as "a person[6] providing motor vehicle transportation for compensation." 49 U.S.C. § 13102 (14). Federal regulations promulgated pursuant to the MCA expand on that definition and define "motor carrier" as a "for-hire

motor carrier or a private motor carrier."[7] 49 C.F.R. § 387.5. In turn, "for-hire carriage" is defined in those regulations as "the business of transporting, for compensation, the goods or property of another." 49 C.F.R. § 387.5.

Moreover, the great weight of authority throughout the country is that the analysis must consider whether the vehicle was "*presently* engaged in the transportation of property in interstate commerce." (Emphasis added.) *Canal Ins. Co.* v. *Coleman*, supra, 625 F.3d 249, 251 ("the weight of authority from [the Fifth] Circuit and beyond supports [the] conclusion that the MCS-90 does not cover vehicles when they are not presently transporting property in interstate commerce"). Additionally, the majority of courts have agreed that a "trip-specific" approach is appropriate in determining the applicability of the MCS-90 endorsement, by finding the relevant question in these cases to be whether the accident occurred while the vehicle was transporting property, for-hire, in interstate commerce. Id., 253–54; see also *Brunson* v. *Canal Ins. Co.*, 602 F. Supp. 2d 711, 715–16 (D.S.C. 2007) (issue in determining applicability of MCA is whether "at the time of the accident" motor vehicle was operating for-hire, transporting property, and in interstate commerce); *Newman* v. *State Farm Mutual Auto Ins. Co.*, supra, 62 So. 3d 811–12 (trip-specific review showed MCS-90 endorsement inapplicable where vehicle was not being used for-hire or in interstate commerce); but see *Royal Indemnity Co.* v. *Jacobsen*, 863 F. Supp. 1537, 1540–42 (D. Utah 1994) (declining to use trip-specific reading).

Finally, an insurer's obligation to pay a judgment recovered against its insured pursuant to an MCS-90 endorsement is triggered only when two elements are satisfied. That is, a MCS-90 endorsement is "triggered only when (1) the underlying insurance policy to which the endorsement is attached does not otherwise provide coverage, and (2) either no other insurer is available to satisfy the judgment against the motor carrier, or the motor carrier's insurance coverage is insufficient to satisfy the federally-prescribed minimum levels of financial responsibility." (Emphasis omitted.) *Carolina Casualty Co.* v. *Yeates*, supra, 584 F.3d 878.

In the present case, neither party disputes that the truck involved in the collision was not a "covered vehicle" under the insurance policy or that no other insurer is available to satisfy the judgment against Tony's. Accordingly, the sole issue before the court is whether there is a disputed issue of material fact that the truck was operating as a for-hire motor carrier transporting property in interstate commerce at the time of the collision. The court found that although there was evidence that Tony's truck *was* operating for-hire, it was *not* engaged in interstate commerce at the time of the collision. The plaintiff argues that the court erred in conclud-

ing that there was no genuine issue of material fact that the truck was not engaged in interstate commerce at the time of the accident. The defendant responds that the court properly found that the truck was not engaged in interstate commerce. In its brief to this court, the defendant argued, as an alternative ground for affirmance, that the court improperly determined the threshold issue that there was no issue of fact that Tony's was operating the vehicle "for-hire" at the time of the collision.[8] We agree with the defendant that the court improperly found that Tony's was operating the vehicle "for-hire" at the time of the accident.

As noted previously, to be considered a "for-hire carriage," the *insured* had to be in the "business of transporting, for compensation, the goods or property of another"; 49 C.F.R. § 387.5; at the time of the accident. The United States Court of Appeals for the Second Circuit has explained the "for-hire" provision in an exposition of the history and purpose of the MCA. "The MCA originally contemplated three categories of motor carriers: common, contract, and private. Common and contract carriers were known as for-hire carriers. . . . Common carriers offered transportation for property and passengers for the general public, while contract carriers arranged transportation services by contract. . . . Private carriers transported property of which they were the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise." (Citations omitted; internal quotation marks omitted.) *Bilyou* v. *Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 226–27 (2d Cir. 2002).

In the present case, the trial court correctly noted that undisputed evidence indicated that Reynolds, as Tony's employee, was being compensated to transport the motor vehicle parts. There is no dispute, however, that Tony's, as the actual insured, was not being compensated for the transport of the motor vehicle parts. That is, the insured, through its employee, was transporting its own property, for its own benefit, without being compensated by any third party. Tony's was neither transporting goods for the general public, nor was it transporting goods in fulfillment of a contract at the time the collision occurred. The defendant's insured, through its employee, simply retrieved motor vehicle parts in Hamden, to be delivered to New Haven, where they ultimately were to be used for repairing other vehicles owned by the insured. Under these circumstances, where the insured effectively was undertaking a personal errand, we cannot construe Tony's to have been operating its vehicle "for-hire" at the time the collision occurred. See *Herrod* v. *Wilshire Ins. Co.*, supra, 499 Fed. Appx. 759–60 (lack of factual predicate to determine whether insured was transporting property of another for compensation at time of accident); see also *Brunson* v. *Canal Ins. Co.*, supra, 602 F. Supp.

2d 716 (driver was not operating for-hire at time of accident where he "was solely on a personal mission to drive the . . . tractor-trailer a few miles from his home for the purpose of trying to sell the truck"); *Newman* v. *State Farm Mutual Auto Ins. Co.*, supra, 62 So. 3d 811–12 (vehicle was not operated for-hire, as insured driver merely was hauling materials he had personally purchased). Accordingly, because there was no evidence that Tony's was operating its vehicle for-hire at the time the collision occurred, the plaintiff could not prevail in demonstrating that the MCS-90 endorsement was triggered, and the court properly granted the defendant's motion for summary judgment.

We briefly address the plaintiff's argument that the public policy of providing "financial protection to members of the public" calls for the enforcement of the MCS-90 endorsement in this case. The thrust of the plaintiff's argument is that a strict reading of the statutory language would thwart the broad, remedial purpose of the minimum financial responsibility scheme for motor carriers, resulting in injustice to the plaintiff and similarly situated individuals. We disagree.

We recognize that the MCS-90 endorsement was intended to ensure "that the public be adequately protected when a licensed carrier uses a . . . vehicle to transport goods . . . ." *Wells* v. *Gulf Ins. Co.*, 484 F.3d 313 (5th Cir. 2007). As we have discussed previously in this opinion, however, the purpose of the MCS-90 endorsement is to protect the public from negligent motor carriers while they are engaged in the transportation of property, for-hire, in interstate commerce. See, e.g., *Herrod* v. *Wilshire Ins. Co.*, supra, 499 F. Appx. 755–56. Simply, the policy goals of the minimum financial responsibility mandate are not inconsistent with our holding today. Tony's was not operating for-hire at the time the accident occurred, and, therefore, this is not an instance in which Congress intended that the MCS-90 endorsement provide coverage. As the United States District Court for the District of South Carolina noted: "Congress and the appropriate regulatory agencies could broaden and clarify the relevant language now in place to provide coverage in factual scenarios similar to the one in this matter." *Brunson* v. *Canal Ins. Co.*, supra, 602 F. Supp. 2d 719. In the absence of such clarification, we must interpret the statutes and regulations as written. See *Perry* v. *Harco National Ins. Co.*, 129 F.3d 1072, 1074–75 (9th Cir. 1997) (rejecting context-specific approach to interpreting MCS-90 endorsement regulations and holding that definition in regulations applied regardless of whether its application promoted regulatory goal).

"An appellate court is authorized to rely upon alternative grounds supported by the record to sustain a judgment." (Internal quotation marks omitted.) *Mortgage Electronic Registration Systems, Inc.* v. *Goduto*, 110

Conn. App. 367, 372, 955 A.2d 544, cert. denied, 289 Conn. 956, 961 A.2d 420 (2008). In light of our conclusion that the truck in question was not operating for-hire when the collision occurred, the MCS-90 endorsement attached to the policy was not triggered and the defendant, as a matter of law and in the absence of any genuine issue of material fact, was not required to pay the judgment rendered against its insured. Because we affirm the court's decision to grant summary judgment on this alternative ground, we need not decide whether the court properly concluded that Tony's truck was not being operated in interstate commerce at the time of the collision.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff's complaint identifies the insured as Tony's Long Wharf Transport, LLC, Tony's Long Wharf, Inc., and/or Tony's Long Wharf Towing, LLC. The sole named insured on the insurance policy, however, is Tony's Long Wharf Transport, LLC. We refer to this entity throughout this opinion as Tony's.

[2] As explained later in this opinion, an MCS-90 endorsement is a standard endorsement required to be included in a commercial motor carrier's insurance policy by the Motor Carrier Act of 1980 (MCA), 49 U.S.C. § 10101 et seq., and the regulations promulgated thereunder, 49 C.F.R. § 387.15 et seq.

[3] As noted previously, the sole named insured on the insurance policy was Tony's Long Wharf Transport, LLC. See footnote 1 of this opinion.

[4] General Statutes § 38a-321 provides in relevant part: "Upon the recovery of a final judgment against any . . . firm . . . by any person . . . for loss or damage on account of bodily injury . . . or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[5] The court reasoned that the trip, from Hamden to New Haven, occurred entirely within the state, and that there was no intention that the motor vehicle parts, as "the *actual goods*," were "to be transported in interstate commerce to a final destination" after being delivered to New Haven and used in repairs. (Emphasis in original.)

[6] The MCA's definition of "person" incorporates the meaning under 1 U.S.C. § 1. See 49 U.S.C. § 13102 (18). Title 1 of the United States Code, § 1, provides in relevant part that the word "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies . . . ." Accordingly, Tony's, a limited liability company, clearly is considered to be a "person" under the MCA.

[7] The term "motor carrier," as defined in the regulations, also includes "a motor carrier's agent, officer, or representative; an employee responsible for hiring, supervising, training, assigning, or dispatching a driver; or an employee concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." 49 C.F.R. § 387.5.

[8] The plaintiff did not timely file with this court a reply brief addressing the alternative ground for affirmance raised by the defendant.